### Ex parte McRoberts.

1. MILITARY JURISDICTION: SOLDIER ON FURLOUGH. While a soldier in the *actual* military service is within the immediate jurisdiction of the military authorities, and can be arrested on civil process only in the manner pointed out in the 33d Article of War (Act of April 10th, 1806); a soldier on furlough is not within the immediate military jurisdiction, and may be arrested on such process.

2. SAME. The purpose of the 33d Article of War (Act of April 10th, 1806) is to aid the civil authorities and jurisdiction, and not to render them subordinate to the military authority.

3. JURISDICTION: CONCURRENT. The Federal and the State courts having concurrent jurisdiction, when a State court takes jurisdiction of a particular case, it becomes, for that case, exclusive, and ousts the jurisdiction of the Federal courts.

*Heard and decided by* Mr. Justice Cole, *at his Chambers, in the city of Des Moines.*

The writ in this case was issued July 19th, 1864, on the application of Captain Robert Lusby, of Company "K," of the 10th Regiment of Iowa Infantry, directed to H. M. Bush, Sheriff of Polk county, commanding him to produce the body of John McRoberts, together with the day and cause of his detention.

Upon the return of the writ, July 20th, 1864, the facts of the case, as shown thereby and by the stipulations of the respective counsel, are in substance as follows: That John McRoberts, on the — day of ——, 1861, volunteered into the United States military service for three years, and was duly mustered into such service as a member of Company "K," 10th Iowa Infantry, and that he has again re-enlisted and his term of service has not yet expired; that on the 20th day of June, 1864, he was granted a furlough for thirty days, at the expiration of which time he was to report to Captain Lusby, and rejoin his company and regiment at Davenport, Iowa; all the veterans of the regiment, including all officers, being home on furlough. On the 30th day of June, 1864, in the city of Des Moines, Polk county, Iowa, the said John McRoberts was charged with having shot one John Allen, a colored man, in the head, whereof he immediately died; that the said McRoberts was immediately arrested by the civil authorities, without any application whatever, to the military authorities, and taken before a justice of the peace, and was by him committed to jail to await an examination, which was, by agreement, fixed for a day after the commencement of a term of the District Court of Polk county; the mittimus commenced in the usual form, as follows: "An order having this day been made by me, A. Morris, a justice of the peace in and for Des Moines township, Polk county, Iowa, that John McRoberts be

held to answer upon a charge of murder for a further hearing on, &c." but was not otherwise signed by a justice of the peace, and was the only written authority by which the sheriff held McRoberts at the time the writ in this case was sued out.

It further appears that on the 19th day of July, 1864, the Grand Jury of Polk county returned into the District Court an indictment for murder against John McRoberts, properly indorsed "a true bill" and filed; that on the 19th day of July, 1864, a bench warrant was issued by the said District Court, which was duly served upon said accused, and he was brought into court, arraigned, and given further time to plead.

And it also appeared that no application has ever been made by the civil upon the military authorities for his delivery over, and that at the time of the commission of the alleged offense, the said John McRoberts was still on furlough, absent from his regiment and company, and was not acting or claiming to act under the orders or commands of any military officer; nor was he in the discharge, or pretending to be in the discharge of any military duty, and that no demand (except as by the writ of habeas corpus in this case), for the body of the said McRoberts had ever been made by any military officer whatever; and that by reason of his restraint he would be unable to report for duty as required by his furlough.

*Jeff. S. Polk* and *S. V. White* for the relator.

*B. F. Murray*, district attorney, *Withrow & Smith*, and *S. Sibley* for the respondent.

COLE, J.—The question presented in this case is one of great importance to the defendant not only, but is practically of the highest importance in its relations to the civil administration of the government, as well as to the military service.

There is not necessarily any conflict in this case between the civil and military authorities, but if there was such conflict, no person would now question, under our Federal Constitution, the rightful supremacy of the civil authority over the military. The counsel for the applicant concede this, as fully as it is claimed by the counsel for the State. But it is claimed, in argument, that McRoberts was, at the time of the commission of the alleged offense, in the military service of the United States, and, therefore, within the exclusive jurisdiction of the federal military authorities, and that a State court cannot acquire any rightful jurisdiction over him for any purpose, during his term of service, except upon application duly made to the military authorities for his delivery over to the civil, and such delivery thereon made.

This claim is based upon chapter twenty of the laws of the first session of the ninth congress, entitled "An act for establishing rules

and articles for the government of the armies of the United States," approved April 10th, 1806. Article 33 is as follows: "When any commissioned officer or soldier, shall be accused of a capital crime, or of having used violence, or committed any offense against the persons or property of any citizen of any of the United States, such as is punishable by the known laws of the land, the commanding officer, and officers of every regiment, troop or company, to which the person, or persons, so accused, shall belong, are hereby required, upon application duly made by, or in behalf of the party or parties injured, to use their utmost endeavors to deliver over such accused person or persons, to the civil magistrate, and likewise to be aiding and assisting to the officers of justice in apprehending and securing the person or persons so accused, in order to bring him or them to trial. If any commanding officer or officers, shall willfully neglect or shall refuse, upon the application aforesaid, to deliver over such accused person or persons, to the civil magistrates, or to be aiding and assisting to the officers of justice in apprehending such person or persons, the officer or officers, so offending, shall be cashiered." U. S. Statutes at Large, vol. 2, page 364.

Upon this article of war, as applied to the facts of this case, two questions naturally arise:

*First.* Is a soldier on furlough, so in the jurisdiction of the military and control of the commanding officer of his company or regiment, as that he may be "delivered over" upon application duly made?

Article 12 of the Laws of Congress, *supra*, provides for the granting of furloughs to officers and soldiers. A "furlough" is a leave or license given by a commanding officer to an officer or soldier to be absent from service for a certain time. (Webster's Dic.) Or, as it is given by Mr. Bouvier, "is a permission given in the army and navy to an officer or private to absent himself for a limited time." (Bouvier's Law Dic.) A soldier on furlough, then, is not necessarily in the custody or control of his commanding officer, for he has "permission to absent himself;" nor is he necessarily within the military jurisdiction, for he has "leave to be absent from service." When he is thus absent from the service and his commanding officer, he is not so in the custody of such officer as that he can be by him delivered over in the meaning of that term, as used in the article of war quoted *supra*.

To illustrate my meaning, suppose a party was arrested under a process from a United States Court, and was being held by virtue of such process, in open court, awaiting his trial. While in such condition, he could not be again arrested by virtue of another process issued from a State court. This is clear. But suppose his trial, for any cause, was postponed to another term, and he should give bail for his appearance at such subsequent term, and therefore have leave " to absent himself

for a limited time," to wit, till such term, he could then be arrested again under the state process, without any conflict with the federal jurisdiction. A plea in this latter case, that he was within the federal jurisdiction, would be unavailing, since he had leave to depart or absent himself for a certain time from that jurisdiction, although he was bound to return to it, at a specified time, and might, under certain circumstances, be re-arrested and committed to its immediate jurisdiction before the expiration of that time.

So, with the soldier, while he continues in the actual military service, he is within the immediate jurisdiction of the military authorities, and being so held, he cannot be arrested on civil process, except in the manner provided by the article of war relied upon by applicant's counsel in this case. But being permitted to absent himself from service, he is thereby without the military jurisdiction, and may therefore be arrested as any other person, and no conflict can arise. It can make no difference, even if true, that a soldier's furlough may be withdrawn at any time at the pleasure of his commanding officer, or that he may be arrested by such officer during its continuance, for, while his furlough remains in force, and he is absent from service on it, he is not within the military jurisdiction, and cannot be delivered over by its authorities until they shall first regain possession of him by arrest or otherwise, which arrest, for liability under the civil law, may as well be primarily done by the civil authorities as by the military.

*Second.* Was that article of war adopted to aid the civil authorities and jurisdiction, or to defeat such jurisdiction and make the military authority paramount?

A single reading of the article will satisfy and convince an impartial mind that the sole purpose of it was to aid the civil authorities in the administration of justice, and to place it out of the power of a criminal to escape the just civil penalties of his acts, by entering the military service or claiming its protection when in it. The article, to this end, requires all officers not only to deliver over the accused, on proper demand, but also to render aid and assistance in apprehending and securing such person, in case he escapes the military and is not in their possession to deliver over. The language is not, that in case the soldier is accused of a crime, that the military shall arrest him and then deliver him over, but that the military shall "be aiding and assisting to the officers of justice in apprehending and securing the person so accused." If it had been the purpose and intent of the law that the primary jurisdiction should be exclusively with the military, it would have provided that when the offense had been committed and the person accused had so escaped as that the military officer could not deliver him over upon application, that the military officers should cause

his arrest and· delivery over. But on the contrary, the article completely negatives the idea that the military is to take primary jurisdiction in his arrest and expressly provides that the civil authorities shall be principal actors in the arrest, and that the military shall aid and assist in such arrest, when applied to therefor.

The accused in this case was not at the time of the commission of the alleged offense in the actual custody or control of any military officer or command, but he was at large on furlough. Then it was not in the power of any officer to deliver him over on application; and the most that could be required by the civil authorities, or done by the military under article 33 (as above), would have been the requiring and rendering of their aid and assistance to the civil authorities in the arrest of the accused. But it so happened in this case that the civil authorities neither requested or needed such aid or assistance, the arrest being made promptly without it. Can it be said, then, that the civil tribunal has no rightful jurisdiction, because the arrest was made without the request or necessity for military aid or assistance? I think not.

I have no occasion in this case to differ in the least from the doctrine laid down by· the Supreme Court of the United States in *Ableman* v. *Booth* and *United States* v. *Booth*, 21 Howard, 506, where it is said, that "the powers of the general government, and of the state, although both exist and are exercised within the same territorial limits, are yet separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres, and the sphere of action appropriated to the United States is as far beyond the reach of the judicial process issued by a State judge, or a State court, as if the line of division was traced by landmarks and monuments visible to the eye." (Page 516.)

Following this doctrine, I should have no hesitation in holding that neither a sheriff or any other State officer would have the right to go to a company or regiment or within the military lines or command of any military officer, and by virtue of a State process to arrest any officer or soldier within such military control for an offense committed, even outside of any military district, and because such officer has not the legal right to make arrests in such cases, the article of war relied upon in this case was adopted, whereby it becomes the duty of the civil officer to stop at the boundary line between the two jurisdictions, and there demand of the military officers the delivery of the accused, if in their jurisdiction, custody or control; but if the accused has fled and is not within the actual control of the military, the State officer has not yet reached his boundary line and may proceed and make the arrest alone, if he can, but if he cannot, he may call for the assistance of the military authorities and they are bound to render it.

While in the decision of this case, I am bound to look to the law as it is, and am not permitted to be influenced by considerations of public policy, which might demand legislative interference; yet, a doubtful construction of a statute may be rendered less doubtful by reference to the effect which must follow a different construction. If the construction contended for by the counsel for the relator is correct, it must follow that any civil arrest might be legal, or illegal, as it should ultimately be developed, whether the accused was a member of any military company in the United States service. If he was a member of any company or regiment, although absent from such service on furlough, then he is exempt from arrest, until, at least, the officer having the civil process can send a hundred, a thousand or two thousand miles, and make application to the proper military officer for his delivery over. Such construction would result in great inconvenience, to say the least, and would, in a very large majority of heinous offenses, amount, by the opportunity for escape, to immunity for crime. While the true construction, it seems to me, is, that where the accused is in the custody or control of a military officer, an application should be made for his delivery; but if he is absent from service and control, either by furlough or escape, there is then no infringement of the military jurisdiction to pursue and arrest him with or without military assistance Again, the accused in this case is charged with one of the highest offenses known to the laws; and it being an offense against the civil authorities, committed when temporarily out of the military service, and when not in the discharge of any military duty, he is not only liable to the civil penalties, but is entitled to the constitutional guarantees in relation to the manner of his trial. He may demand his constitutional right of a trial by a jury of his peers, and of the vicinage of his alleged offense; not only may he demand these rights, but it has been repeatedly held that he cannot waive them. If he may demand a jury trial, as he clearly can, may not the state also insist upon it? So that the administration of justice shall be uniform, and not one thing to one man and another to another.

If this accused shall elect to be tried by a "drum-head court-martial" and such election is granted, while another elects to claim his constitutional guarantee of a jury trial, which cannot be refused, what becomes of the civil administration of the government? What stability or uniformity or confidence would it have? Simply none.

But, it is claimed further, that the accused in this case is bound by his furlough to report himself to Capt. Lusby, at Davenport, on the 20th inst., and unless he does so he will be a deserter and liable to the penalties for desertion, and that by reason of the restraint by the sheriff over him he is prevented from keeping his obligations of furlough.

These obligations ought to exert a potent restraining influence against the commission of crime, but they are not sufficient to break the tie which binds the criminal to the penalty for his acts. That a man cannot take advantage of his own wrong is a maxim now too well settled to need any argument.

In the view which I take of this case, it becomes unnecessary to discuss further the question of supposed conflict of jurisdiction between the District Court and the federal military authorities. It is clear that the District Court has jurisdiction of the offense charged and of the person of the accused, and there was nothing in the manner of his arrest, which can oust the District Court of such jurisdiction. The accused was not under the control of any military officer when arrested, and, therefore, ought not to be now placed under such control.

It is a well settled doctrine that where the United States courts have jurisdiction, concurrent with the State courts, and the State courts first take jurisdiction of the particular case, such jurisdiction becomes, for that case, exclusive, and completely ousts the jurisdiction of the federal courts. *Taylor et al.* v. *Carry*, 20 Howard U. S., 583; *Keating* v. *Spink*, 3 Ohio State, 105.

And, certainly, the United States military authorities cannot claim a greater right, by virtue of their jurisdiction over the persons and offenses of alleged criminals, conferred by the act of Congress approved March 3d, 1863, entitled, "An act for enrolling and calling out the national forces, and for other purposes," which are clearly also within the jurisdiction of the State courts, than is claimed by the United States judicial tribunals in like cases. In this view, then, this case being originally (if indeed it was, which may well be doubted), equally cognizable by the federal military and by the State courts, the latter having first acquired jurisdiction by the arrest of the accused, such jurisdiction became exclusive, and defeats any right of jurisdiction in this particular case on the part of the military.

My personal knowledge of the defendant, his family and their history, as well as his own generous and faithful military service, and his brave and unexceptionably exemplary conduct therein, during near three years, and his crowning act of devotion to the country, in his re-enlistment in the veteran corps, incline me involuntarily, to the most patient investigation and favorable consideration of his case, but I can see no avenue of escape from the conclusion that he must be held for condemnation or acquittal under that civil law, against which he is charged to have offended.

The prisoner John McRoberts is, therefore, remanded to the custody of the officer producing him under the writ.