# STATE v. WALSH.

No. 6643.  Decided December 31, 1943.  (144 P. 2d 757.)

See 24 C. J. S. Criminal Law, sec. 1973.  25 Am. Jur. 269.

*Ray S. McCarty,* of Salt Lake City, for appellant.

*Brigham E. Roberts,* Dist. Atty., of Salt Lake City, and *Grover A. Giles,* Atty. Gen., for respondent.

WOLFE, Justice.

The defendant, Emmett Patrick Walsh, was charged by information with the crime of burglary in the second degree and with being an habitual criminal. He was tried before a jury on a plea of not guilty and convicted. On May 14, 1943, he was sentenced and committed to the Utah State Prison for an indeterminate term of not less than fifteen years. Subsequently, and within the time allowed by law, the defendant prosecuted this appeal.

In the information the State accused the defendant of the "Crime of Burglary in the Second Degree and Being an Habitual Criminal" and charged that the defendant "broke and entered the apartment of C. H. Christensen in the night time with intent to commit larceny therein." Then followed an allegation that the defendant on "the 9th day of December, 1937, was convicted of the crime of Burglary in the First Degree * * * in the State of Idaho, and * * * sentenced to serve a term of not less than seven nor more than fifteen years, in the State Prison of Idaho, and * * * was committed to the State Prison to serve said term"; and an allegation that the defendant "on the 18th day of February, 1931, was convicted of the crime of Grand Larceny in the * * * State of Utah, and * * * sentenced to serve a term of not less than one or more than ten years in the State Prison of the State of Utah" and that he was committed to said prison to serve said term.

Before pleading to the information the defendant moved the court to strike from it all of the allegations relating to the charge that the defendant was an habitual criminal. Defendant also filed a motion to quash the information on the grounds (1) that it was improper to charge the defendant with the substantive crime, to wit: burglary in the second degree, and with being an habitual criminal in the same

pleading; and (2) that the informaton did not state facts sufficient to charge the defendant with being an habitual criminal in that it did not appear that he had been twice previously convicted of a crime and sentenced and committed to the prison for terms of not less than three years. Both these motions were denied and the rulings thereon were assigned as error.

The Utah Habitual Criminal Statute was enacted in 1896. Laws of Utah 1896, p. 262. It has continued in force with only minor changes. The Statute as it appears in the 1943 Annotated Code provides:

"103-1-18. 'Habitual Criminal' Defined—Punishment. Whoever has been previously twice convicted of crime, sentenced and committed to prison, in this or any other state, or once in this and once at least in any other state, for terms of not less than three years each, shall, upon conviction of a felony committed in this state, other than murder in the first or second degree, be deemed to be an habitual criminal, and shall be punished by imprisonment in the state prison for not less than fifteen years * * * ."

The State framed its information on the theory that a person who has been sentenced and committed to the State Prison for an indeterminate sentence of from one to ten years has been sentenced and committed to the State Prison for a term of "not less than three years" within the meaning of the Habitual Criminal Statute. On this appeal it contends that an indeterminate sentence to prison is a sentence for the maximum, that the sentence and commitment from one to ten years is a sentence and commitment for ten years, and that it is therefore a sentence of not less than three years within the meaning of the Habitual Criminal Statute. This view was adhered to by the Iowa Supreme Court in the case of *Haley* v. *Hollowell*, 208 Iowa 1205, 227 N. W. 165.

This is the only case brought to light by our research or by the research of counsel which directly considered this question. It is squarely in point and holds that a sentence of from one to ten years is a sentence of "not less than three years" within the meaning of an habitual criminal

statute which provided that a person who had been twice convicted of a crime, sentenced, and committed to prison for terms of not less than three years should be deemed to be an habitual criminal upon a subsequent conviction. In so holding the court reasoned that an indeterminate sentence of from one to ten years is a sentence for the maximum, to wit: ten year, and that ten years is not less than three years.

Numerous other cases are cited which hold that an indeterminate sentence setting a minimum and a maximum is a sentence for the maximum. *State* v. *Roberts*, 91 Utah 117, 63 P. 2d 584; *Cardisco* v. *Davis*, 91 Utah 323, 64 P. 2d 216 (concurring opinion) ; *Lee Lim* v. *Davis*, 75 Utah 245, 284 P. 323, 76 A. L. R. 460; *State* v. *Empey*, 65 Utah 609, 239 P. 25, 44 A. L. R. 558; *Mutart* v. *Pratt*, 51 Utah 246, 170 P. 67; In re *Conditional Discharge of Convicts*, 73 Vt. 414, 51 A. 10, 56 L. R. A. 658; In re *Lee*, 177 Cal. 690, 171 P. 958; *People* v. *Meyers*, 31 Cal. App. 2d 515, 88 P. 2d 212; *People* v. *Washington*, 264 N. Y. 335, 191 N. E. 7; *People* v. *Joyce*, 246 Ill. 124, 92 N. E. 607, 20 Ann. Cas. 472; *Story* v. *Rives*, 68 App. D. C. 325, 97 F. 2d 182. However, none of these cases involved the construction of habitual criminal statutes. They cannot, therefore, be construed as holding that a sentence from one to ten is a sentence of "not less than three years" within the meaning of an habitual criminal statute. They are, however, persuasive.

The position of the defendant finds support in certain statements made in *Valdez* v. *State*, 49 Ariz. 115, 65 P. 2d 29, 31, wherein the court construed a statute which provided for a heavier punishment upon the showing of prior convictions of a crime punishable by "imprisonment * * * for any term exceeding five years." The defendant contended that a crime carrying a penalty of "not less than one nor more than fifteen years" was not a penalty coming within the language "any term exceeding five years." The court stated: "If the language of section 4898, supra, had been

for 'a term not less than five years,' the position of defendant would be correct, but such was not the case. We think the only reasonable construction of the words 'any term exceeding five years' refers to the maximum and not to the minimum sentence which may be imposed." Thus while the statement is dicta, the court did indicate that it would have held that "not less than one nor more than fifteen years" would not come within the language "a term not less than five years," which holding would have corresponded with the defendant's contention here.

The indeterminate sentence law did not come into effect in Utah until 1913, Laws of Utah, 1913, c. 100, p. 192. As amended (see 105-36-20, U. C. A.) it provides that the court is not to fix a definite term of imprisonment; "but that the sentence and judgment of imprisonment in the state prison" should be "for a period of time not less than the minimum and not to exceed the maximum term provided by law for the particular crime for which such person has been convicted." From 1896, when the first habitual criminal act was enacted, to 1913, when the first indeterminate sentence law became effective, a person convicted of a crime was sentenced by the trial judge to a definite term. Then, as now, there were minimum and maximum punishments provided for each crime. The judge imposing sentence was to take into consideration the facts surrounding the commission of the crime and then impose a sentence for a definite number of years which would be not less than the minimum nor more than the maximum provided by law.

Under such a procedure where a defendant was convicted of a crime, sentenced and committed for a definite term, it could be readily ascertained whether such definite term was a term of "not less than three years." A defendant was not deemed to be an habitual criminal merely upon conviction for three felonies—but the statute required two convictions for crimes where the judge imposed sentences and committed the defendant for terms of not less than

three years. Some crimes were of such gravity and serious-ness that the legislature provided minimum sentences of three years and over; but in the majority of cases the mini-mum sentence might in the discretion of the trial judge, be for less than three years for the minimum was itself less than three years.

As to these latter crimes it is obvious that the legislature intended that they should form the basis of an habitual criminal charge *only* if the trial judge, who was familiar with the surrounding circumstances, thought the criminal record or conduct to be serious enough to warrant the im-position of a sentence for a term of three years or more. If there were extenuating circumstances so that the trial judge imposed a sentence for a term of less than three years, the conviction for such a crime could not be used as the basis for an habitual criminal charge.

Thus it appears that it was the intent of the legislature in case of most crimes to have someone pass upon the cir-cumstances surrounding the commission of the crime, and make a determination as to whether the criminal con-duct was serious enough to warrant a sentence which could subsequently form the basis for a prosecution under the Habitual Criminal Statute. The legislature in effect said:

"Certain crimes are of such a nature that we will set a minimum sentence of one year and a maximum of ten, and let the judge who is familiar with the evidence determine the exact number of years for which the defendant will be sentenced. If the judge says it is serious enough to warrant a sentence of over three years, that con-viction may subsequently be used as a basis for an habitual criminal charge—if it warrants a sentence of less than three years, that con-viction cannot be so used."

Under this procedure of a definite sentence a court could sentence a prisoner found guilty of second degree burglary to a term of imprisonment of not less than one, nor more than twenty years. Compiled Laws of Utah, 1907, Sec. 4335. As pointed out in an article in Bulletin of University of Utah, January, 1931, entitled "A study of the Indeterminate Sen-

tence, Probation, and Parole in Utah" by Thomas and Jensen:

"Under such wide discretionary powers, judges of diferent training, temperament, and views of the theory of criminal punishment were bound to impose greatly varying punishments for the same offense committed under approximately similar circumstances. As illustrating this point: On July 7, 1908, in Salt Lake County, Utah, a certain prisoner was sentenced to one year imprisonment for second degree burglary. On August 10, 1908, in Weber County, Utah, another prisoner was sentenced to ten years imprisonment for second degree burglary. The record showed both convicts to be first offenders."

The indeterminate Sentence Act, now 105-36-20, was enacted at least in part for the purpose of remedying these inequalities. It provided that the courts should not fix a definite term, but instead should sentence the defendant for a period of time not less than the minimum and not to exceed the maximum term provided by law for that particular crime. By Sec. 3, Chap. 100, Laws of Utah 1913, it was provided that the court imposing sentence must within thirty days thereafter mail a report to the Secretary of the Board of Pardons containing a statement as to the term for which, in the opinion of the court, the prisoner so sentenced should be imprisoned and any other information which might be of aid to the board in passing upon applications for parole, commutation of sentence, or pardon of the prisoner so sentenced. Thus the power to determine the definite time which the prisoner should be required to serve, was vested in one board which could adopt a uniform practice or policy toward all cases.

No changes were at this time made in the wording of the habitual criminal statute. But by the very plan of leaving the term to be served to be subsequently fixed by the Board of Pardons the former basis for determining whether or not criminal conduct was so serious that it could be subsequently used as a basis for a charge under the habitual criminal statute, had been repealed. The trial judge could no longer set a definite sentence. The closest thing to this

was the procedure of the Board of Pardons, which, after hearing the evidence and taking into account the prisoner's prison behavior, etc., could commute the sentence, parole the prisoner or pardon him. The actual time served in prison would be comparable to the definite term formerly imposed by the judge. Yet this actual time served could not be taken to determine whether or not the criminal conduct for which the prisoner was sentenced and committed was of such a serious nature that it could subsequently be used as the basis for a charge under the habitual criminal statute, for the reason that the prisoner was not then sentenced and committed upon a determination of the gravity of his criminal conduct. This determination came afterward. Such interpretation does not fit the very language of the Habitual Criminal Act.

The indeterminate Sentence Law did not purport to change the minimum or maximum punishment that could be inflicted for any crime. It was merely a change in the method imposing sentence. The legislature by enacting it did not indicate that it believed, for example, that second degree burglary was at that time any more serious a crime than it was considered to be at the time the Habitual Criminal Act was enacted. Before the indeterminate sentence law, a second degree burglary conviction could not be used as a basis for an habitual criminal charge unless and until the judge imposed a sentence and committed the defendant to the State prison for a term of not less than three years. Otherwise the criminal conduct was not considered to be serious enough to constitute such a basis. The State now argues, that by passing the indeterminate sentence law and by making that type of sentence mandatory, the legislature intended to make the conviction for practically every felony, regardless of the surrounding circumstances, a basis for a subsequent habitual criminal charge. We do not believe it had such an effect.

The Habitual Criminal Act itself distinguishes between the convictions that can be used as a basis for a charge

under it. The two convictions and commitments which are to form a basis for such a charge must be for "terms of not less than three years." Then upon the conviction of any subsequent felony the defendant will be deemed to be an habitual criminal. Practically every felony provided for by statute in this state provides for a penalty of imprisonment for a maximum of over three years.

We have held in *Thompson* v. *Harris*, 106 Utah 32, 144 P. 2d 761, that the Habitual Criminal Act was not repealed by the Indeterminate Sentence Law. They are pari materia and must be construed in reference to each other. In order to best articulate the purposes of the one with the working of the other the phrase "not less than three years" as used in the Habitual Criminal Act should be construed as descriptive of those crimes which are punishable by a term of three years or more which means those crimes whose minimum is three years or more. True such interpretation could have been given prior to the enactment of the Indeterminate Sentence Law, but since the gravity of the criminal conduct was thought to be reflected in the definite sentence given by the trial judge within the maximum and minimum limits the purposes of the Habitual Criminal Act were best served by taking such sentences as a basis. Since that basis has disappeared and we cannot say that the maximum sentences ipso facto reflect the heinousness of the criminal conduct—it being merely a maximum up to which the most heinous conduct in connection with the particular crime is punishable—and since the actual time served as meted out by the Board of Pardons cannot be used as a basis, we resort to the most logical method of articulating the purposes of the Habitual Criminal Act with the workings of the Indeterminate Sentence Law; that is, construing the phrase in the former reading "not less than three years" to pertain to a crime which the legislature has at all events thought grave enough to merit a minimum sentence of three years. We have in the case of *Thompson* v. *Harris*, supra, considered why we

cannot hold that there was an implied repeal of the Habitual Criminal Act by the Indeterminate Sentence Statute even though there may be some difficulty in fitting in the purposes of one with the workings of the other.

Under the present procedure the final determination in all cases is left to the Board of Pardons. Even where the prisoner is convicted and sentenced as an habitual criminal for a term of not less than 15 years under ■ the statute, the minimum is not binding on that Board. As stated in *Commonwealth* v. *Ashe,* 145 Pa. Super. 26, 20 A. 2d 881, 883, insofar as the Board of Pardons is concerned,

"the minimum sentence is 'merely an administrative notice by the court \* \* \*, calling attention to the legislative policy that when a man's so-called minimum sentence is about to expire, the question of grace and mercy ought to be considered and the propriety of granting a qualified (release) be determined.' Com. 1. Kalck, supra, 239 Pa. [533], pages 541, 542, 87 A. [61], page 64. See, also, 24 C. J. S., Criminal Law, p. 204, § 1622; Ex parte Parker, 106 Mo. 551, 17 S. W. 658." See, also, Commonwealth v. Smith, 1943, 347 Pa. 495, 32 A. 2d 913.

It follows then that a sentence of "not less than one nor more than ten" does not come within the language "not less than three years" as used in the habitual criminal act. This holding ascribes to the legislature the intention of leaving to the Board of Pardons the determination of the length of time a prisoner should be confined for the commission of all crimes carrying penalties with a minimum of less than three years regardless of the number of convictions. But as to those more serious crimes such as murder, robbery, treason, etc., which carry minimum penalties of more than three years, the legislature has given notice of a legislative policy that where a defendant who has been twice convicted of such crimes, is subsequently convicted for any felony, a minimum term of 15 years is recommended.

The motion to strike the allegations charging defendant with being an habitual criminal should have been granted.

The other assignments of error are all directed toward the procedure followed in trying the defendant on the charge of being an habitual criminal. Our holding that this charge should have been stricken makes it unnecessary to discuss these other points. Reversed and remanded for a new trial.

LARSON, McDONOUGH, MOFFAT, and WADE, JJ., concur.