## THOMPSON v. HARRIS

No. 6655. Rehearing denied October 4, 1944. (152 P. 2d 91.)

Certiorari denied by U. S. Supreme Court.

**100**

See 24 C. J. S. Criminal Law, sec. 1967. 25 Am. Jur., 159.

For former opinion, see 106 Utah 32, 144 P. 2d 761.

*Dorothea Merrill Dryer,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., and *Brigham E. Roberts,* Dist. Atty., of Salt Lake City, for defendant.

WOLFE, Chief Justice.

In support of his petition for rehearing the plaintiff, Grover Thompson, has set forth two propositions upon which he alleges that this court erred in its former opinion. He first contends that the court erred in holding that plaintiff was not denied his liberty without due process of law. This contention again places in focus the procedure followed by the trial court in convicting Thompson of the crime of robbery. In the information upon which the conviction is based, Thompson was charged with the commission of the crime of robbery and with being an habitual criminal. The two previous convictions upon which the state was to rely to show that Thompson was in the status of an habitual criminal were set forth. By these allegations regarding the two previous convictions the jury was apprised of the previous criminal record of the accused before he had an opportunity to elect whether he would place his credibility in issue by taking the witness stand in his own behalf. Thompson contends that this deprived him of this right of election and of a trial by a fair and impartial jury and thus took his liberty from him without due process of law. He also contends that the wrongful inclusion of previous convictions of felonies if only error was so gross as to amount to a deprivation of substantive due process.

The second contention set forth is that the trial court was without jurisdiction to sentence Thompson under the Habitual Criminal Act. This argument is based upon the fact that the information affirmatively disclosed that the two pre-

vious convictions upon which the state would rely to show that Thompson was an habitual criminal were not sufficient to support a conviction under the Habitual Criminal statute.

We have considered the arguments and authorities cited in support of each of these contentions. In the former opinion we held that the writ of habeas corpus could be used to correct jurisdictional errors and to determine whether or not the petitioner had been deprived of any constitutional right. Except in these two respects, errors in proceedings before a trial court must be corrected by appeal. One of the basic difficulties inherent in a contrary holding is the question of where to draw the line. Somewhere and sometime there must be an end to litigation. The writ of habeas corpus must not be used to discover and correct all errors which might creep into a criminal trial. The time for taking an appeal has wisely been limited by law. If the writ of habeas corpus were to be used to reach all defects in the trial which could be raised by a timely appeal, no conviction could ever become final. We recognize that some errors are more prejudicial to a defendant than are others, but if habeas corpus is to be used to correct error, where can we draw the line? Should we leave the determination as to when there has been and has not been sufficient error to warrant interference by the use of a writ of habeas corpus entirely to the discretion of each judge based on standards which he may invoke from his own mind? We believe that the only sound line that can be drawn is to restrict the use of the writ of habeas corpus to the correction of jurisdictional errors and to errors so gross as to in effect deprive the defendant of his constitutional substantive or procedural rights. Anything short of that must be corrected on appeal or by the Board of Pardons. And this of course is true whether the constitutional right is granted by the State Constitution or by the Federal Constitution through absorption in the Fourteenth Amendment. Even here Mr. Justice Cordozo in *Palko* v *Connecticut,* 302 U, S. 319, 58 S. Ct. 149 151, 82 L. Ed. 288, warned us that "there is no such general rule" that "whatever would be a violation of the original bill

of rights (Amendments 1 to 8) if done by the federal government is now equally unlawful by force of the Fourteenth Amendment if done by a state." We must therefore exercise some care in relying on Federal cases which hold that certain procedures in Federal courts have denied constitutional rights (constitutional under the Federal Constitution) to a defendant. However, illustrations of denials of rights granted to a defendant in a criminal case, both by our state constitution and to defendants tried under Federal jurisdiction, are furnished by such cases as a refusal of counsel to the defendant; where the trial is a sham or pretense, one form of which would be where officials having to do with the prosecution knowingly procured or introduced false testimony; denial of the right to be confronted with witnesses against him; where defendant was required to testify against himself, although Mr. Justice Cardozo in Palko v. Connecticut, supra, thought that "immunity from compulsory self-incrimination" was not such requirement, the absence of which would violate a "principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" And in *Twining* v. *New Jersey,* 211 U. S. 78, 29 S. Ct. 14, 53 L. Ed. 97, it was held that the Fourteenth Amendement does not insure the privilege against self-incrimination where the state withdraws it.

The plaintiff must necessarily assert that he has not been accorded due process of law in order to claim constitutional protection. The question then resolves itself at bottom as to whether introduction of previous convictions of unrelated crimes in the trial of the instant charge denies him due process. A much cited case on the history and nature of due process, *Hurtado* v. *State of California,* 110 U. S. 516, 4 S. Ct. 111, 121, 292, 28 L. Ed. 232, involving the question of California's change from indictment to information as a method of charging felonies, states:

"The supreme court of Mississippi, in a well-considered case (*Brown* v. *Levee Com'rs,* 50 Miss. 468), speaking of the meaning of the phrase 'due process of law,' says: 'The principle does not demand that the

laws existing at any point of time shall be irrepealable, or that any forms of remedies shall necessarily continue. It refers to certain fundamental rights which that system of jurisprudence, of which ours is a derivative, has always recognized. If any of these are disregarded in the proceedings by which a person is condemned to the loss of life, liberty, or property, then the deprivation has not been by due process of law." '

\* \* \* \* \*

"It follows that any legal proceeding enforced by public authority, whether sanctioned by age or custom, or newly devised in the discretion of the legislative power in furtherance of the general public good, which regards and preserves these principles of liberty and justice, must be held to be due process of law."

Says Mr. Chief Justice Fuller in *Leeper* v. *Texas,* 139 U. S. 462, at page 467, 11 S. Ct. 577, at page 579, 35 L. Ed. 225:

" \* \* \* That by the fourteenth amendment the powers of states in dealing with crime within their borders are not limited, except that no state can deprive particular persons, or classes of persons, of equal and impartial justice under the law. That law in its regular course of administration through courts of justice is due process, and when secured by the law of the state the constitutional requirement is satisfied; and that due process is so secured by laws operating on all alike, and not subjecting the individual to the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice. *Hurtado* v. *California,* 110 U. S. 516, 535, 4 S. Ct. 111 [292, 28 L. Ed. 232], and cases cited."

The same language is repeated in *Caldwell* v. *Texas,* 137 U. S. 692, at page 697, 11 S. Ct. 224, 34 L. Ed. 816.

Due process may mean something more than the existing law of the land for as observed in Hurtado v. State of California, supra, "otherwise it would be no restraint upon legislative power". Nor according to Mr. Justice Matthews in the Hurtado case do the "settled usages and modes of proceeding existing in the common and statute law of England before the emigration of our ancestors, and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country" "furnishes an indispensable test of what constitutes 'due process of law;' [so] that any proceeding

otherwise authorized by law, which has not been sanctioned by usage, or which supersedes and displaces one that is, cannot be regarded as due process of law." The fact that the early English cases judicially condemned the introduction into the instant case of evidence of previous unrelated crimes cannot be the test of due process at least in a situation where this evidence is not introduced as proof of the commission of the instant crime but of a status of habitual criminality even though that charge is joined with that of the instant crime.

In *Munn* v. *Illinois*, 94 U. S. 113, 134, 24 L. Ed. 77, it was said:

"A person has no property, no vested interest, in any rule of common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances."

" * * * process of law, which is not otherwise forbidden, must

The Hurtado case goes on to say:

be taken to be due process of law, if it can show the sanction of settled usage both in England and in this country; but it by no means follows, that nothing else can be due process of law. * * * to hold that such a characteristic is essential to due process of law, would be to deny every quality of the law but its age, and to render it incapable of progress or improvement. It would be to stamp upon our jurisprudence the unchangeableness attributed to the laws of the Medes and Persians."

After canvassing the specific guarantees of freedom and fair trial contained in our Constitution we may be fearful in trying to give any test of "due process of law" except in terms which are as susceptible of varying content as is that phrase itself. It includes or perhaps is coterminous with those "principles of justice so rooted in

the traditions and conscience of our people as to be ranked as fundamental." There may be difference of opinion as to what those principles are when we pass the requisites of fair trial free of star chamber proceedings, right to testify on his own behalf and to be confronted with witnesses against him, right to aid of counsel, right to be apprised of the accusation against him and time to prepare to meet it, "the need to be protected against torture physical or mental" including forced confessions. At all events we do not believe that the immunity from coupling proof of a charge of habitual criminality with that of an instant charge is one of these immutable principles the denial of which violate our traditions of what is a fair trial in the fundamental sense. We cannot say that proof of prior convictions or crimes as probative of the issue presented by the instant charge "subjects the individual to the arbitrary exercise of powers of government unrestrained by the established principles of private right . . ." The rule excluding such evidence was invoked by the courts, not because it with without probative value, but because the jury would tend to give excessive weight to it. And with greater positiveness we can say that the defendant has no constitutional right to be shielded from consideration of such evidence in the determination of the guilt or innocence of an instant crime, where such evidence is not introduced in support of the instant charge, but in pursuance of the proof of the status of habitual criminality. We should add that at this time we do not intend and in the original opinion did not intend to pass on the question of the procedure which should pertain in view of Sec. 105-21-47, U. C. A. 1943, in bringing before the jury the charge of habitual criminality, whether that and the instant charge can be brought contemporaneously, or the former await the conviction of the latter. We need go no further now than to hold that the defendant is not constitutionally protected against contemporaneous consideration.

The case of *State* v. *Walsh,* 106 Utah 22, 144 P. 2d 757, did not hold expressly or in effect that the allegation of prior

crimes which could legally be the basis for a charge of habitual criminality should not be read or submitted to the jury until after verdict on the substantive crime charged. It simply held that because the prior convictions set out were not adequate to form the basis for a charge of habitual criminality, the motion to strike all allegations relating to the charge of habitual criminality should have been granted. We did not pass on the procedure which should have been adopted by the trial court in handling a charge of habitual criminality because it was not necessary to do so. Whether, in view of Sec. 105-21-47, U. C. A. 1943, allegations correctly forming a basis for habitual criminality should be uncoupled from the substantive charge, and be read and submitted to the jury only after conviction of the instant charge, we need not now determine. That is a matter of procedure. We did, however, in the main opinion in the case of *Thompson* v. *Harris*, 106 Utah 11, 144 P. 2d 761, by a unanimous opinion, decide that even where the former convictions were not adequate a joinder with the instant charge and a submission of both questions to the jury contemporaneously would not work a denial of substantive or procedural due process and that no constitutional question was involved. And we stated therein the reasons for our decision. We adhere to that decision. Joinder of a charge of habitual criminality with an instant charge of a felony and making the conviction of the latter crime one condition of the finding of the former violates no constitutional right. We are not concerned with the wisdom of legislative action in providing for the coupling of allegations relating to the two charges so as to bring to the attention of the jury at the time of its consideration of the instant charge, the fact that the defendant was previously convicted of unrelated felonies, if in fact such procedure is sanctioned by legislation.

It is urged that reading to the jury the allegations of former convictions contained in the information and, a

fortiori, introduction of proof in support of them interferes with the constitutional privilege of his electing to take the stand. There is no substance to this. The constitutional right is that he shall not be compelled to give evidence against himself. This certainly does not mean that he is constitutionally protected against wrong or incompetent evidence given by others against him and it certainly does not mean that he has constitutional protection against evidence or procedure which may be damaging to him where the legislature has the right to provide that it may come before the jury either in connection with the instant charge or in support of an issue of habitual criminality which may be coupled with the instant charge. The fact that, when it is coupled with the instant charge, it may have influenced or even importuned him to take the stand in his own defense when he would otherwise have remained off and not run the risk of being confronted with past convictions of felonies, cannot by the greatest stretch of the imagination be construed as taking away or even trammelling his constitutional immunity from giving evidence against himself. Many matters, rightly or wrongly introduced in the State's case, may determine him to go on the stand in his own defense. But he still has the choice of going on or staying off. All that can be said is that something has occurred which takes away the potency of the reasons for remaining off or furnishes weight in favor of a decision to go on the stand. As already noted, the fundamental question herein presented is: Has the defendant a constitutional right to have withheld from the jury evidence relating to prior convictions for unrelated felonies? This should not be confused with restrictions against selfincrimination, or other constitutional limitations.

The petitioner's second contention must also fail. The sentence imposed on the verdict rendered was a correct sentence in view of the verdict. This fact cannot be over-emphasized. He was charged with the substantive crime of robbery and with being in the status of an habitual criminal. The jury found him to be guilty of robbery and found that he was an habitual criminal. Upon this

verdict the sentence imposed was a correct one. It is in this respect that the case differs from the *Lee Lim* v. *Davis* case, 75 Utah 245, 284 P. 323, 76 A. L. R. 460, and with the majority of the cases cited by the petitioner. In the Lee Lim case the sentence imposed on the plea of guilty to a charge of murder in the second degree was an improper, erroneous sentence; here the sentence imposed on the verdict and judgment rendered is correct. To set this sentence aside we must go back behind the judgment. Habeas corpus cannot be used merely to test the sufficiency of an information unless the information is so fatally defective that it shows a total lack of criminality or lack of jurisdiction over the subject matter upon which the information purports to have the court act. *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377. Here the information purports to charge the substantive crime of robbery and that the defendant was in the status of an habitual criminal. The court had jurisdiction over both of these matters. The information, though defective, was sufficient to invoke this jurisdiction. So long as the information sets forth sufficent facts to show the basis of the charge and to show that the court has jurisdiction over the matters which the information purports to charge, defects therein will not be reviewed on a petition for a writ of habeas corpus.

The petition for rehearing is therefore denied.

McDONOUGH and WADE, JJ., concur.

LARSON, Justice.

I dissent. I think the procedure followed as outlined by the Chief Justice was such a far departure from a fair trial, such a transgression of the constitutional and legal rights guaranteed a defendant, as to amount to depriving him of due process. I do not conceive how any proceeding which denies one a constitutional right can be termed "due process of law"; how an unconstitutional thing or act be said to be "the law of the land."

There has here been entered up and made of record a conviction which this court has said is "all wet", and a sentence

imposed which we have said is "all wrong", to stand forever against defendant, and form the basis for future similar proceedings as "habitual criminal", whereas the record is clear that one of the prior convictions pleaded could not in law be an element in fixing a status of habitual criminal. *State* v. *Walsh*, 106 Utah 22, 144 P. 2d 757.

That a sentence imposed which is excessive may be corrected by habeas corpus proceedings is recognized by many courts, including the Supreme Court of Utah. *Lee Lim* v. *Davis*, 75 Utah 245, 284 P. 323, 76 A. L. R. 460. Many courts have held that relief from an excessive sentence by habeas corpus does not lie until the term for which one could be held has expired, when habeas corpus will secure release from the excess. But that rule does not afford petitioner here any salvation, because the record still stands showing a commitment for a term of not less than 15 years. Even a release by the Board of Pardons within 15 years would not save the record for Thompson. In truth and in fact he is not now chargeable with being an habitual criminal. I cannot subscribe to such position and perpetrate such injustice. Reason, justice and law require that we would "upset the apple cart" as far as this sentence is concerned and follow the rule announced by this court in the Lee Lim case, supra.

I have no quarrel with the general statement made by the Chief Justice as to the scope of matters examinable on habeas corpus. But we differ on what matters come within the field covered by those general terms. The following matters have been held to be encompassed within the field of jurisdiction as pertains to review by habeas corpus under the due process clause: Where it is made to appear that officials connected with the trial in state courts knowingly procured false testimony or knowingly perpetrated a fraud upon defendant, *United States ex rel. Lesser* v. *People of State of New York*, D. C., 34 F. Supp. 730, affirmed *United States ex rel. Lesser* v. *Hunt*, D. C., 117 F. 2d 30; where commitment based on swift reckless pretence of a trial and petitioner denied a fair trial, petitioner was detained in violation

of the federal constitution and habeas corpus lies, *Ex parte Sharp*, D. C., 33 F. Supp. 464; where relator was without money or counsel and failed to perfect an appeal, *Adams* v. *United States ex rel. McCann*, 317 U. S. 269, 605, 63 S. Ct. 236, 87 L. Ed. 268, 143 A. L. R. 435, setting aside *United States ex rel. McCann* v. *Adams*, 2 Cir., 126 F. 2d 744. Where accused was denied benefit of counsel, *Alexander* v. *Johnston*, 9 Cir., 137 F. 712; *Norris* v. *Hudspeth*, 10 Cir., 114 F. 2d 1007; *Scott* v. *Aderbold*, 10 Cir., 116 F. 2d 797; the constitutional right to be confronted with the witness against him, *Burgess* v. *King*, 8 Cir., 130 F. 2d 761.

"A motion to vacate judgment and sentence and to withdraw plea of guilty on grounds that defendant was insane and under duress and misrepresentation when he pleaded guilty, was denied assistance of counsel, and was not advised of right to withdraw plea of guilty, and that court erred in imposing sentence less than ten days after the plea, went to the jurisdiction of trial court, and hence could be raised collaterally on habeas corpus in any federal court where the defendant was detained, including court which rendered the judgment. 28 U. S. C. A. § 723a; Federal Rules [in Criminal Cases after Verdict], rule 2, 18 U. S. C. A. [following] § 688." *Robinson* v. *Johnston*, 9 Cir., 118 F. 2d 998, certiorari denied *United States ex rel. Robinson* v. *Johnston*, 314 U. S. 675, 62 S. Ct. 177, 86 L. Ed. 540, rehearing denied 314 U. S. 713, 62 S. Ct. 358, 86 L. Ed. 568, vacated, 316 U. S. 649, 62 S. Ct. 1301, 86 L. Ed. 1732.

In determining whether the deprivation of constitutional rights amounts to a denial of "due process of law" the inquiry on habeas corpus is directed to a review of the entire proceedings and not to each separate part and step thereof, and if the total result of the trial as it affects the accused's rights was to deny him the kind of trial the law provides, then it was not due process and habeas corpus lies. *Brock* v. *Hudspeth*, 10 Cir., 111 F. 2d 447. These are only a few of the matters which have been held reviewable by habeas corpus.

The tendency of the Federal statutes and of Federal decisions has been to extend rather than curtail the scope of the writ of habeas corpus, 28 U. S. C. A. §§ 451-466; *Gall* v. *Brady*, D. C., 39 F. Supp. 504, affirmed 4 Cir., 125

F. 2d 253. It has been held to be available to review convictions on some matters which should have been reviewed by appeal, where appeal was not had and time therefore has passed; *Miller* v. *United States*, 6 Cir., 142 F. 2d 249, decided April 18, 1944; *Stonefield* v. *Buchanan*, 6 Cir., 124 F. 2d 23, affirmed *Ex parte Stonefield*, D. C., 36 F. Supp. 453. A habeas corpus proceeding concerns itself solely with jurisdiction of subject matter or of the person of defendant or with preservation of constitutional guarantees to those accused of crime. *Leonard* v. *Hudspeth*, 10 Cir., 112 F. 2d 121. The limitations upon remedies afforded by habeas corpus should be flexible and readily available to prevent manifest injustice. *Huntley* v. *Schilder*, 10 Cir., 125 F. 2d 250. Habeas corpus proceeding in character is that of a "civil proceeding" and resort to a writ of habeas corpus is not to inquire into criminal act of which complaint is made, but into right of liberty, and immediate purpose to be served is relief from illegal restraint. *Ex parte Billings*, D. C., 46 F. Supp. 663, affirmed *Billings* v. *Truesdell*, 10 Cir., 135 F. 2d 505. See also *Benesch* v. *Underwood*, 6 Cir., 132 F. 2d 430. Certainly a right not to be compelled to testify against oneself, is in the present state of law, a constitutional right. And an effort to plead in an information a confession claimed to have been made by accused would be held an infringement of that right. So too the right to be secure in name and reputation is fundamental, as against an attempt to plead in an information matters that constitute an invasion thereof. Under the new doctrine of constitutional rights under the due process clause announced by the Supreme Court of the United States in *McNabb* v. *United States*, 318 U. S. 332, 63 S. Ct. 608, 87 L. Ed. 819, habeas corpus should lie to correct the manifest injustice and the illegal and erroneous sentence involved in this action.

As to the second contention, the prevailing opinion stresses the fact that the sentence imposed was a correct one in view of the verdict. But that opinion admits that the information on which that verdict was rendered did not charge the offense and status on which such a verdict could be rendered.

If it can be upheld at all, it charged at most a simple robbery as the maximum or gravest crime of which defendant could be convicted, and a verdict finding anything more than this was beyond the power of the jury, and beyond the power of the court to impose sentence. If one were charged with involuntary manslaughter and the jury returned a verdict of guilty of first degree murder, would the court have power and authority to impose the death penalty? If one were charged by information only with the crime of fornication and the jury returned a verdict of guilty of rape, could the imposition of a sentence of life imprisonment be justified as valid because it conformed to the verdict? Could such things be called "due process of law" and must the accused suffer the penalty because it cannot be reached by habeas corpus? That seems the acme of strictness in application of rules of law.

MOFFAT, J., deceased.