[Crim. No. 603.    Third Appellate District.—February 24, 1922.]

## In the Matter of the Application of EDWARD CHESLEY KOESTER for a Writ of Habeas Corpus.

[1] CRIMINAL LAW— COMMISSION OF OFFENSE BY SOLDIER—CONCUR-RENT JURISDICTION OF MILITARY AND CIVIL TRIBUNALS.—Notwithstanding the language of article 74 of the Articles of War, to the effect that when a person subject to military law is accused of a crime or an offense committed within the geographical limits of the states of the Union and the District of Columbia, and punishable by the laws of the land, "the commanding officer is required, except in time of war, upon application duly made, to use his utmost endeavor to deliver over such accused person to the civil authorities, or to aid the officers of justice in apprehending and securing him, in order that he may be brought to trial," the jurisdiction of the military and civil tribunals is concurrent where our armies are not in the enemy's territory and there is an absence of actual hostilities at the time of the commission of the alleged offense, albeit a state of war may still exist in contemplation of law between this and another country.

[2] ID.—JUDGMENT — JURISDICTION — COLLATERAL ATTACK.—Where a person has been tried and convicted of an offense so denounced by a valid law, in a court of competent jurisdiction, the judgment of conviction, being in all respects valid upon its face, cannot in a collateral attack thereon be nullified or disturbed; and the mere statement of facts in a petition for a jurisdictional writ impeaching such judgment cannot of itself have the effect of countervailing the legal force of such judgment.

[3] ID.—CONVICTION — HABEAS CORPUS—JURISDICTION — PRESUMPTION. On an application for a writ of *habeas corpus* to secure the release of petitioner from the state prison on the ground that the superior court did not have jurisdiction of his person, he having been a soldier in the army of the United States at the time of his trial and conviction, it will be presumed in favor of the judgment of conviction that the military authorities granted the civil authorities permission to try petitioner for the offense with which he was charged or that petitioner submitted himself to the jurisdiction of the superior court, waiving any right that he might conceive that he had to be tried by a military tribunal.

PROCEEDING on Habeas Corpus to secure the release of petitioner from the state prison on the ground that the Superior Court did not have jurisdiction of his person. Writ discharged and petitioner remanded to custody.

The facts are stated in the opinion of the court.

Robert H. Schwab for Petitioner.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The petitioner is a prisoner confined in the state prison at Folsom, under a judgment of sentence for an indeterminate term, rendered by the superior court in and for the city and county of San Francisco on the twenty-fifth day of February, 1920, for the crime of the forgery of a telegraphic money order. Claiming that his restraint under said judgment is illegal and void, he has applied to this court for his release from the custody of the warden of said prison through the writ of *habeas corpus*. The ground upon which he bases the contention that he is illegally restrained of his liberty may be gathered from the language of the petition for the writ, as follows:

"That your petitioner was from the 25th day of April, 1919, to the 24th day of March, 1920, a soldier in the Army of the United States and stationed at Fort Rosecrans; that on the 7th day of October, 1919, your petitioner was arrested in the City and County of San Francisco, and that thereafter and on the 25th day of February, 1920, by judgment of the Superior Court of the City and County of San Francisco, sentenced to an indefinite period by said

Superior Court upon a charge of forgery of a telegraphic
money order; that at the time of his arrest he requested
permission to send a telegram to his commanding officer,
which request was denied; that at no time thereafter was
your petitioner permitted to notify his commanding officer
at Fort Rosecrans of the fact that he was in custody upon
said alleged charge. That your petitioner during all of
said times was under the control of and subject to the mili-
tary laws and regulations of the United States and not
subject to the jurisdiction of the Courts of the State of
California except by permission of the Army of the United
States.

"That the enforcement of said military laws and regula-
tions fall within the jurisdiction of the Secretary of War.

"That at the time the judgment was rendered by the Su-
perior Court of the State of California, in and for the City
and County of San Francisco, said court did not have juris-
diction over the person of this defendant and that said judg-
ment is null and void."

[1] Briefly stated, the specific contention is that, the peti-
tioner, being, at the time of the alleged commission of the
crime for which he is now suffering punishment and also
at the time of his prosecution for and conviction thereof,
a soldier in the army of the United States, *in time of war,*
the jurisdiction to try him for the said crime was exclusively
in the military department of the government, unless juris-
diction of his person was yielded by the military to the civil
authorities for that purpose, and that, therefore, since (as
is the claim) permission to try him for the offense by the
civil courts was not granted by the military authorities, his
trial and conviction by the civil authorities was void, *ab
initio,* and wholly nugatory. It is argued that, notwith-
standing that at the time that the petitioner committed the
crime and also at the time he was tried therefor, there had
been and was a complete cessation of actual or active hostili-
ties between this country and Germany, yet, in contempla-
tion of law, this country was still in a state of war with
Germany and remained so until peace was officially declared,
which declaration was not made until a date subsequent to
the commission of the crime, and that, such being the case,
the jurisdiction to try the petitioner for the offense charged
against him was as much within the exclusive jurisdiction of

the military department of the government as though actual or active hostilities were being prosecuted at the time of the commission of the offense. In support of this position reliance is placed largely upon the language of article 74 of the Articles of War (U. S. Comp. Stats., sec. 2308a) to the effect that when a person subject to military law is accused of a crime or an offense committed within the geographical limits of the states of the Union and the District of Columbia, and punishable by the laws of the land, "the commanding officer is required, *except in time of war*, upon application duly made, to use his utmost endeavor to deliver over such accused person to the civil authorities, or to aid the officers of justice in apprehending and securing him, in order that he may be brought to trial." There are conceivable circumstances under which it no doubt could and should be held that the military department of the government is vested with exclusive jurisdiction to try and punish soldiers of the United States army for offenses committed by them against the law of the land. For instance, if the armies of the United States were in the enemy's country, the military tribunals would then undoubtedly and, for obvious reasons, should have, under the Articles of War as established by our government, exclusive jurisdiction of trying and punishing offenses of every grade committed by persons in the military service. (*Coleman* v. *Tennessee*, 97 U. S. 509 [24 L. Ed. 1119, see, also, Rose's U. S. Notes].) But we would not say that, where our armies are not in the enemy's territory and where there is an absence of actual hostilities at the time of the commission of the alleged offense, such exclusive jurisdiction exists, albeit a state of war may still exist in contemplation of law between this and another country, only, however, because peace has not been formally declared. In such a situation it seems to be the view of the cases that the jurisdiction of the military and civil tribunals is concurrent. (*Ex parte McRoberts*, 16 Iowa, 600; *Coleman* v. *Tennessee*, 97 U. S. 509 [24 L. Ed. 1119]; *Grafton* v. *United States*, 206 U. S. 348 [11 Ann. Cas. 640, 51 L. Ed. 1085, 27 Sup. Ct. Rep. 749, see, also, Rose's U. S. Notes]; *United States* v. *Clark*, 31 Fed. 710, 712; 6 Op. Atty. Gen. 419; *State* v. *Rogers*, 37 Mo. 367, 368.)

In *Grafton* v. *United States, supra,* it is said: "While, however, the jurisdiction of general courts-martial extends to all crimes, not capital, committed against public law by an officer or soldier of the army within limits of the territory in which he is serving, this jurisdiction is not exclusive but only concurrent with that of the civil courts."

In *Coleman* v. *Tennessee, supra,* speaking of a section of the Articles of War, which is in language similar to that of section 74, above referred to, it is said: "But the section does not make the jurisdiction of the military tribunals exclusive of that of the state courts. It does not declare that soldiers committing the offenses named (murder, robbery, arson, burglary, and the like) shall not be amenable to punishment by the state courts."

Again, in the same case, it is said: "We do not mean to intimate that it was not within the competency of Congress to confer exclusive jurisdiction upon military courts over offenses committed by persons in the military service of the United States. . . . All we now affirm is, that by the law to which we are referred, the thirtieth section of the Enrollment Act, no such exclusive jurisdiction is vested in the military tribunals mentioned. No public policy would have been subserved by investing them with such jurisdiction, and many reasons may be suggested against it. . . . In denying to the military tribunals exclusive jurisdiction, under the section in question, over the offenses mentioned, when committed by persons in the military service of the United States and subject to the Articles of War, we have reference to them when they were held in States occupying, as members of the Union, their normal and constitutional relations to the federal government, in which the supremacy of that government was recognized, and the civil courts were open and in the undisturbed exercise of their jurisdiction. When the armies of the United States were in the territory of insurgent states, banded together in hostility to the national government and making war against it; in other words, when the armies of the United States were in the enemy's country, the military tribunals mentioned had, under the laws of war and the authority conferred by the section named, exclusive jurisdiction to try and punish offenses of every grade committed by persons in the military service. Officers and soldiers of the armies of the Union

were not subject during the war to the laws of the enemy, or amenable to his tribunals for offenses committed by them.''

Thus we think a definitive answer is returned to the claim of the petitioner that he is entitled to be released from his present restraint upon the ground upon which he relies, as stated above. But, even if we were compelled to yield the position above taken, there is still another and, indeed, a conclusive reply to the petitioner's claim for release in this proceeding. It does not appear from the record before us, except only by the averments of the petition, that the petitioner was a soldier of the United States armies at the time of the commission of the offense of which he was convicted; nor, if such soldier, that jurisdiction of his person for the purposes of his trial was not yielded to the civil by the military authorities. Neither the information nor a copy thereof is before us and we may assume that, since an averment in that pleading that he was a soldier would have been wholly unnecessary and, indeed, supererogatory, in the statement of the offense charged, the fact that he was a soldier, if it was a fact, was not stated therein, nor that if a soldier his trial in the superior court was not with the permission of the military authorities. Nor is it made to appear in the warden's return to this writ, accompanying which return is the commitment which, as a matter of fact, is a copy of the judgment, that the petitioner was a soldier in the army of the United States.

[2]  There is no proposition in law better understood or more thoroughly settled than that, where a person has been tried and convicted of an offense so denounced by a valid law, in a court of competent jurisdiction, the judgment of conviction being in all respects valid upon its face, cannot in a collateral attack thereon, be nullified or disturbed, and it, therefore, follows that the mere statement of facts in a petition for a jurisdictional writ impeaching such judgment cannot of itself have the effect of countervailing the legal force of such judgment.  [3]  And in every collateral attack upon a judgment valid on its face, all presumptions and intendments must be indulged to support it, and it is, therefore, to be presumed in this collateral attack upon the judgment against the petitioner that he presented every defense against the crime charged against him and every

excuse against the right of the superior court to proceed with his trial which were available to him and that the issue thus presented was tried and determined against him at the trial. At any rate, assuming that the petitioner was at the time of the commission of the crime a soldier in the United States army in time of war, it is to be presumed that, if necessary, the permission of the military authorities to try him for the offense with which he was charged was granted to the civil authorities or that the petitioner himself submitted himself to the jurisdiction of the superior court, waiving any right that he might conceive that he had to be tried by a military tribunal by failing to set up the plea that the jurisdiction to try him was exclusively in the latter tribunal. Of course, it is not questioned, and, indeed, it could not be, that the superior court of the city and county of San Francisco has under the law jurisdiction of the offense of which the petitioner was convicted and that it also had jurisdiction of his person, so long as such jurisdiction was not ousted by the timely interposition of some authority having superior jurisdiction over his person with regard to the offense charged against him.

No reason has been shown why the prisoner should be enlarged and the writ is, therefore, discharged and the petitioner remanded to the custody of the warden of the state prison at Folsom.

Burnett, J., and Finch, P. J., concurred.