[Crim. No. 4654. In Bank. Dec. 3, 1946.]

In re HUGH R. SEELEY, on Habeas Corpus.

Hugh R. Seeley, in pro. per., for Petitioner.

Robert W. Kenny, Attorney General, and Arthur A. Ohnimus, Deputy Attorney General, for Respondent.

SHENK, J.—This is a proceeding in habeas corpus. The petitioner is confined in the State Prison at Folsom under a judgment of conviction on his plea of guilty of the crime of burglary of the first degree and an adjudication that he is an habitual criminal by virtue of his admission of two prior convictions of a felony. The basis for his application for release

from custody is his claim that one of the prior convictions did not constitute a felony for which he could be adjudged an habitual criminal and that his sentence is therefore excessive and void.

The petitioner was accused by information of the crime of burglary committed on March 10, 1938, in the city of Los Angeles. The information also alleged two prior convictions of felonies for which the petitioner had served terms. One was in the circuit court of Josephine County, Oregon, on December 9, 1932, which the information specified as a prior conviction of "Burglary, a felony." The petitioner pleaded guilty to the main charge, and admitted the prior convictions. The court found the burglary to be of the first degree, and also found that the petitioner was not armed with a deadly weapon at the time of the commission of the crime. He was adjudged to be an habitual criminal. (Pen. Code, § 644.) Judgment was entered accordingly and the petitioner was received at Folsom on June 1, 1938.

The problem is immediately presented as to the scope of the hearing and determination in this proceeding in view of the record of the trial in which petitioner was adjudged an habitual criminal.

In the determination of a proceeding in habeas corpus in this state the court is ordinarily concerned with an inquiry into the jurisdiction of the court in which the prisoner was convicted. It is the general rule that the writ may not be used to correct error nor be employed where there is a remedy by appeal or other direct attack. But in exceptional cases it may be issued even though other remedies might have been available. (*In re Belt,* 159 U.S. 95, 100 [15 S.Ct. 987, 40 L.Ed. 88]; *In re Bell,* 19 Cal.2d 488 [122 P.2d 22]; *In re Connor,* 16 Cal.2d 701, 705, 712 [108 P.2d 10].)

In *In re Bell, supra,* at page 494, this court said: "There are other situations in which habeas corpus is used, not as a test of jurisdiction, but to review a question of law that cannot otherwise be raised or is so important as to render the ordinary procedure inadequate. Thus, it lies to test whether there is probable cause to justify the committing magistrate in holding petitioner for trial. . . . There is no other method of securing a review of the magistrate's determination in this regard. . . . It also lies to test whether the complaint charges a public offense . . . even though this question falls within the jurisdiction of the trial court and may be raised on ap-

peal. Certain courts go so far as to permit the use of habeas corpus before trial when the statute of limitations has run upon the offense charged. . . ." In that case it was also held that it was not necessary to exhaust all available remedies by appeal before habeas corpus could be invoked to test the question of constitutionality.

In the present case, in view of the record, there were no apparent grounds of appeal and an appeal would not have disclosed the alleged unlawful term of imprisonment of the petitioner. Furthermore, by section 1025 of the Penal Code, the defendant's admission that he has suffered the alleged prior convictions, unless withdrawn by consent of the court, is made conclusive of the fact of his having suffered such previous convictions "in all subsequent proceedings." But the words "subsequent proceedings" refer to proceedings in the same action, including an appeal from the judgment of conviction. That they do not include an independent proceeding in habeas corpus is indicated by the fact that the courts in numerous cases hereinafter cited have entertained the inquiry regardless of the fact that the defendant had admitted the prior convictions.

The Legislature has provided by section 1484 of the Penal Code that a petitioner in a habeas corpus proceeding may "allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. The court or judge must thereupon proceed in a summary way to hear such proof as may be produced against such imprisonment or detention, or in favor of the same, and to dispose of such party as the justice of the case may require. . . ." In the Bell case, *supra* (19 Cal.2d at p. 501 et seq.), following *In re Connor*, 15 Cal. 2d 161, 164 [99 P.2d 248], and other cases, and applying the foregoing provisions of the Penal Code, the court rejected the "all too broad" statement that the inquiry on habeas corpus is limited to an investigation on the face of the proceedings in the trial court. The established rule in this state was reiterated to the effect that in a habeas corpus proceeding the court may look beyond the face of the record. In *In re Connor, supra* (16 Cal.2d at p. 712), it was said that the scope of inquiry on habeas corpus in this state may, under exceptional circumstances, extend over the entire course of proceedings in the lower courts and may include additional evidence taken in the court entertaining the proceeding either directly or under an order of refer-

ence. The inquiry extends not only to the power of the trial court to hear and determine the subject matter, but also to its authority to act in a particular manner over the person of the accused. (*Fortenbury* v. *Superior Court,* 16 Cal.2d 405 [106 P.2d 411].) In the latter case it was pointed out that such a course does not imply an abandonment of fundamental legal principles, but, on the contrary, that it necessarily flows from constitutional requirements and long established rules.

The courts have refused to recognize the remedy by writ of error *coram nobis* as appropriate for an inquiry into an asserted imposition of an excessive sentence. That writ has been denied as an alternative where the remedy by appeal existed. (*People* v. *Lumbley,* 8 Cal.2d 752 [68 P.2d 354]; *People* v. *McVicker,* 37 Cal.App.2d 470 [99 P.2d 1110]; *People* v. *McConnell,* 20 Cal.App.2d 196 [66 P.2d 720]; *People* v. *Moore,* 9 Cal.App.2d 251 [49 P.2d 615].) In *People* v. *Lumbley,* at page 755, and *People* v. *McVicker,* at page 475, it was indicated that habeas corpus is the proper proceeding to test the question whether the petitioner was serving an excessive sentence by virtue of an unauthorized adjudication that he was an habitual criminal. The respondent fails to cite a case, and we have discovered none, in which the court has refused to examine into the petitioner's claim that the trial court exceeded its power by imposing an excessive sentence, when that claim was presented in a habeas corpus proceeding. Courts have inquired into the merits of such a claim in habeas corpus even where the question might have been determined on an appeal from the judgment of conviction. (See *In re Gilliam,* 26 Cal.2d 860 [161 P.2d 793]; *In re Brady,* 5 Cal.2d 224 [53 P.2d 945]; *In re Morck,* 180 Cal. 384 [181 P. 657]; *In re Howard,* 69 Cal.App.2d 164 [158 P.2d 408]; *In re Connell,* 68 Cal.App.2d 360 [156 P.2d 483]; *In re Taylor,* 64 Cal.App.2d 47 [148 P.2d 143]; *In re Bertrand,* 61 Cal.App.2d 183 [142 P.2d 351]; *People* v. *McVicker, supra,* 37 Cal.App.2d 470, 474-475; *In re Tartar,* 1 Cal.App. 2d 400 [36 P.2d 419]; *In re Miller,* 133 Cal.App. 228 [23 P.2d 1034]; *In re Bouchard,* 38 Cal.App. 441 [176 P. 692].) As more directly intimated in the Bell case, *supra* (19 Cal. 2d 488, at p. 503-504), that inquiry is not only justified, but is made imperative by the provisions of section 1484 of the Penal Code which gives the court broad powers on the investigation of the legality of the restraint under which a

prisoner is held, and precludes the court from refusing to dispose of the prisoner's rights as the justice of the case may require and particularly when it appears that the sentence for which he could lawfully be held is less than that actually imposed upon him. The most recent pronouncement of this court is contained in the opinion in *In re McVickers, ante,* p. 264 [176 P.2d 40], this day filed, the reasoning and conclusions of which are in harmony with those expressed herein. In that case it was held that an adjudication of habitual criminal status is not a judgment of conviction but is, in effect, only an ancillary and severable determination of a fact pertinent to the length of imprisonment and right to parole, and hence that such determination is not necessarily characterized by the high degree of finality of a judgment of conviction. It was also held in that case that it is not the crime which a defendant may have committed in a sister state, but the crime of which he has been convicted therein, that determines his status under sections 644 and 668 of the Penal Code. The adjudicated elements of the offense must meet the requirements of the California law. It follows from that case and other pertinent cases therein and herein cited that a petitioner may attack and secure relief in habeas corpus from an erroneous adjudication of habitual criminal status where the facts appearing, either from the face of the record or by satisfactory proof, show that as a matter of law the prior conviction is of a crime which does not meet the definition of an offense included in said section 644. ■ We conclude that the court in this proceeding should inquire into the facts presented in arriving at a determination of the question whether the petitioner is being held under an excessive sentence, and therefore is, to that extent, illegally restrained of his liberty. But the petitioner must meet the burden of overcoming the presumption of regularity which attaches to the judgment of the trial court, by proof of facts sufficient to show that the sentence imposed upon him was unauthorized and excessive. (*In re Bell, supra,* 19 Cal.2d 488, at p. 500; *In re Taylor, supra,* 64 Cal.App.2d 47, at p. 51.)

■ The court derives its power to adjudge a defendant an habitual criminal from the provisions of section 644 of the Penal Code. At the time of the petitioner's conviction that section included, among others, the crimes of robbery, burglary, and grand theft, two convictions of which, together with time served therefor, would subject an accused to an adjudi-

cation that he is an habitual criminal and to the increased punishment for the subsequent commission of a felony. Section 668 of the Penal Code brings within the purview of section 644 convictions in other states for crimes which, if committed within this state, would be punishable as felonies under the laws of this state. In *People* v. *Dawson,* 210 Cal. 366, 372 [292 P. 267], it was stated that in order to establish the prior conviction of a felony, the statutory requirements must be fulfilled. The prior convictions must be of felonies enumerated in section 644, or substantially identical thereto, in order to effect the purposes of that section. (*In re Howard, supra,* 69 Cal.App.2d 164; *In re Connell, supra,* 68 Cal.App.2d 360; *In re Taylor, supra,* 64 Cal.App.2d 47, 50; *People* v. *McChesney,* 39 Cal.App.2d 36, 41 [102 P.2d 455]; *People* v. *Lohr,* 28 Cal.App.2d 397 [82 P.2d 615]; *People* v. *Morrison,* 26 Cal. App.2d 616 [80 P.2d 94]; *People* v. *McGee,* 24 Cal.App.2d 391 [75 P.2d 533]; *People* v. *Shaw,* 137 Cal.App. 533 [30 P.2d 1031].)

In the Lohr case, *supra* (28 Cal.App.2d at p. 399), on appeal from a judgment of conviction it was said: "In order to adjudge a defendant an habitual criminal the test is not whether he shall have been twice convicted of any felonies, but whether he shall have been twice convicted of felonies enumerated in section 644 of the Penal Code." There the defendant admitted the prior convictions. In the Connell case, *supra* (68 Cal.App.2d 360), the defendant pleaded guilty to the main charge and admitted two prior convictions. He was adjudged an habitual criminal and sentenced to life imprisonment. On habeas corpus he was discharged when investigation revealed that one of the prior convictions was of a crime in another state which was not within the purview of section 644, and that the petitioner had served, with the benefit of credits, the maximum term for which he should have been imprisoned on conviction of the main charge. In the Howard case, *supra* (69 Cal.App.2d 164), a habeas corpus proceeding, the petitioner had been charged with prior convictions of two felonies, one in the State of New Mexico, which he admitted. He was adjudged an habitual criminal under section 644. It was conceded that the New Mexico conviction was for the theft of an overcoat and lumber jacket of the value of $45 and that this was not such a crime as would constitute a felony in this state or which was included within section 644 of the Penal Code. It was held that the trial court

should not have considered the New Mexico conviction as bringing the petitioner within the provisions of section 644. The petitioner was released upon a showing that he had served the maximum term for which he should have been imprisoned.

The question then is whether the crime of which the petitioner was convicted in Oregon is one upon which he could be adjudged an habitual criminal under section 644 of the Penal Code.

It appears from the record before us that on October 21, 1932, the petitioner was arrested and held in jail at Grants Pass, Oregon, on a tentative charge of burglary in violation of section 14-309, Oregon Code. Official investigation disclosed that the entry of the building involved had not been with an intent to steal or commit a felony. The charge of burglary was accordingly withdrawn and in its place there was substituted the charge of Larceny in a Building, a violation of section 14-316, Oregon Code. The petitioner pleaded guilty to that charge in the Oregon court. He and two others also accused were found to have entered a Standard Oil Company warehouse and carried away thirty gallons of gasoline. He was sentenced and was confined in the penitentiary at Salem, Oregon, for an indeterminate period not to exceed eighteen months.

Larceny in a Building is defined by section 14-316 of the Oregon Code as follows: "If any person shall commit the crime of larceny in any dwelling house, . . . or warehouse, . . . or shall break and enter in the night or daytime any church, . . . or other building erected or used for public uses, and commit the crime of larceny therein, such person, upon conviction thereof, shall be punished by imprisonment in the penitentiary not less than one year nor more than seven years."

The crime, as so defined, is not expressly included in section 644 of the Penal Code. Furthermore, the larceny of thirty gallons of gasoline, being goods of a value less than $200, is not comparable to grand theft in this state (Pen. Code, §487), nor is it robbery (Pen. Code, § 211). The respondent does not question that the conviction of Larceny in a Building is the prior conviction referred to in the information here involved. He contends, however, that the Oregon crime of Larceny in a Building is substantially identical to the crime of burglary which is defined in section 459 of the Penal Code

as the entry of any house, warehouse, etc., with intent to commit grand or petit larceny or any felony. It is conceded that intent to steal or commit a felony, a necessary ingredient of the crime of burglary in this state, is not included in the definition of Larceny in a Building under the Oregon statute, but it is argued that it may be assumed to have been present by the act of "entering" the building. One difficulty with the respondent's position is that the uncontroverted showing in this proceeding is contrary to the assumption. The Oregon law (Oregon Code, § 14-311) defines burglary (other than in a dwelling house) as the breaking into and entering any "other structure or erection in which any property is kept, with intent to steal therein, or to commit any felony therein." The punishment prescribed is "imprisonment in the penitentiary not less than two nor more than five years." Thus Oregon has a burglary statute containing a definition of burglary comparable to that in our Penal Code. But as stated, before judgment in Oregon the official investigation of the petitioner's conduct disclosed that there had been no violation of the burglary statute. On the showing in this proceeding it is clear that intent to steal or commit a felony was not inherent in the crime with which the petitioner was charged and of which he was convicted in Oregon. The intent in fact was not present. The crime of Larceny in a Building, as defined by the Oregon Code and as found by the court in Oregon to have been committed by the petitioner, is not a crime which would have been punishable as a felony in this state and is not comparable to any felony mentioned in section 644 of the Penal Code. The conviction of that crime was therefore not a legal basis for an adjudication that the petitioner was an habitual criminal. It follows that an excessive sentence was imposed upon the petitioner.

The petitioner has met the burden of showing that the sentence imposed on him was unauthorized in part and excessive; but it does not follow that he is entitled to his discharge. The rule is settled in this state in accord with the weight of authority that "where a court has jurisdiction of the person and of the crime, the imposition of a sentence in excess of what the law permits does not render the legal or authorized portion of the sentence void, but leaves only such portion of the sentence as may be in excess open to question and attack. In other words, the sentence is legal in so far as it is within the provisions of law and the jurisdiction of the

court over the person and offense, and only void as to the excess when such excess is separate and may be dealt with without disturbing the valid portion of the sentence.'' (12 R.C.L. p. 1208.) The rule is recognized and applied in *In re Morck, supra* (180 Cal. 384), *In re Howard, supra* (69 Cal. App.2d 164), and in other cases above cited. The rule in this state is also in accord with the text in 12 Ruling Case Law at page 1209 that, ''Prior to the expiration of that part of the sentence that the court could legally impose, the prisoner will not, according to the prevailing rule, be discharged on habeas corpus, on the ground that the sentence is excessive.'' (*In re Rosencrantz*, 211 Cal. 749, 752 [297 P. 15] ; 205 Cal. 534, 541 [271 P. 902] ; *In re Spaulding*, 8 Cal.App.2d 497 [48 P.2d 133] ; *In re Miller, supra*, 133 Cal.App. 228.) No difficulty is likely to arise in ascertaining the lawful portion of the sentence which should have been imposed upon the petitioner. ■ Section 461 of the Penal Code fixes the punishment for first degree burglary as imprisonment in the state prison for not less than five years. Since no maximum is there prescribed the petitioner has failed to show that he is entitled to his release at this time. The proper course to pursue is for the constituted authority to refix the sentence of the petitioner in accordance with the declaration of his rights as stated in this opinion.

The writ is discharged and the petitioner is remanded.

Gibson, C. J., Carter, J., and Schauer, J., concurred.

SPENCE, J., Concurring and Dissenting.—I concur in the conclusion reached in the majority opinion that the writ should be discharged and that the petitioner should be remanded to custody. I dissent, however, from the implied conclusion there reached that the judgment adjudicating petitioner's status as an habitual criminal should be nullified in this proceeding on habeas corpus, and also from the express conclusion that ''The proper course to pursue is for the constituted authority to refix the sentence of the petitioner in accordance with the declaration of his rights as stated in this [the majority] opinion.'' I am also in disagreement with much that is said in the majority opinion in reaching these last mentioned conclusions.

The majority opinion herein cites and relies upon the reasoning and conclusions in the majority opinion in *In re Mc-*

*Vickers, ante,* p. 264 [176 P.2d 40], this day filed. In my dissent in the McVickers case I discussed to some extent the basic problem involved here, but indicated that I would more fully discuss that particular problem in my dissent in this case.

The basic problem here is that of the scope of review on habeas corpus in those cases where it is sought to use such proceeding for the purpose of nullifying a judgment in a criminal proceeding adjudicating the accused to be an habitual criminal. In such cases the attack on habeas corpus is upon the *validity* rather than upon the *effect* of such judgment. I believe that in such cases the scope of review extends only to the question of the jurisdiction of the trial court to make such habitual criminal adjudication; that the inquiry does not extend beyond the face of the record in the criminal proceeding in which such adjudication was made; and that if it does not affirmatively appear from the face of such record that the trial court was without jurisdiction to make such adjudication, then the habitual criminal adjudication should not be nullified. The majority opinion, however, holds that the scope of review is not confined in such cases to the question of the jurisdiction of the trial court to make such habitual criminal adjudication; that the inquiry is not confined to the face of the record in the criminal proceeding in which the adjudication was made; and that regardless of whether it may not affirmatively appear from the face of such record that the trial court was without jurisdiction, the court in which the habeas corpus proceeding is brought is not only under the duty to review the habitual criminal adjudication as extensively as an appellate court would review it on direct attack by way of appeal but is also under the duty to accept any evidence which may be presented for the purpose of examining anew, in the same manner as did the trial court in the first instance, the question of whether the petitioner is an habitual criminal within the meaning of our habitual criminal law. (Pen. Code, § 644.) The meaning of the word "jurisdiction," as above used, will be hereinafter discussed.

That the foregoing statements correctly reflect the views expressed in the majority opinion here as well as those expressed in the majority opinion in the McVickers case, there can be no doubt. In the majority opinion in the McVickers case it is said that on habeas corpus the court will "inquire into questions of so-called 'mere error' going to the whole

basis of the determination . . .," thereby indicating that the scope of review on habeas corpus is as extensive as that on direct attack by way of appeal. In the majority opinion herein, in view of the admission by petitioner in the trial court of the alleged prior conviction in Oregon of "Burglary, a felony" and in view of the admitted fact that the statutory definition of "burglary" in Oregon is substantially identical with the statutory definition in this state (Pen. Code, § 459), it is conceded that petitioner could not have been successful on direct attack by appeal as "there were no apparent grounds of appeal." But despite such admissions, the majority view is that the entire question may be examined anew on habeas corpus, disregarding the proceedings in the trial court in which the habitual criminal adjudication was initially made and considering evidence dehors the record therein, which evidence in this case consists merely of the allegations of petitioner concerning the claimed facts surrounding the commission of the prior offense and the prosecution therefor. Not a single authority is cited involving facts similar to those presented in this case, and I cannot join in the conclusions of the majority opinion herein involving, as they do, a revolutionary departure from accepted rules relating to the scope of review on habeas corpus without any good or sufficient reason being suggested for such departure.

Some of the problems arising under our habitual criminal law have been suggested in my dissent in the McVickers case. The problems presented are many, including those which confront the trial courts where the habitual criminal adjudications are initially sought; those which confront the appellate courts on direct attack on habitual criminal adjudications by way of appeal; those which confront the trial and appellate courts in proceedings by way of writ of error *coram nobis,* in which it is sought to nullify the habitual criminal adjudication; and those which confront the trial and appellate courts in proceedings on habeas corpus, in which it is sought either to nullify the habitual criminal adjudication or to limit its effect to an adjudication of habitual criminality based on two prior convictions only. It is therefore understandable, as expressed in the majority opinion in the McVickers case, that the courts have felt "somewhat uncertain"; and it is further understandable that some confusion is found in the authorities dealing with the review of judgments in which habitual

criminal adjudications have been made, as well as in the authorities dealing with the review of judgments in which no such adjudications have been made but in which cases prior convictions have been alleged and admitted or found to have been suffered. This confusion appears to be due in a large measure to (1) the failure of the courts at times to clearly recognize the distinction between the scope of review on direct attack on appeal and the scope of review on collateral attack on habeas corpus or *coram nobis*, and (2) the further failure of the courts at times to clearly recognize the distinction between the scope of review on habeas corpus when the attack is made on the *validity* of the judgment and the scope of review when the attack is upon the *effect* rather than upon the *validity* of the judgment. The present case and other pending cases offer the opportunity for this court to make clear these distinctions, but it seems to me that the majority opinion herein and that in the McVickers case can serve only to perpetuate the existing confusion.

There is at present confusion in the authorities dealing with review of habitual criminal adjudications on direct attack by way of appeal (*cf. People* v. *Shaw*, 137 Cal.App. 533 [30 P.2d 1031], and *People* v. *Hayes*, 3 Cal.App.2d 59 [39 P.2d 213]) ; and while the cases dealing with review by way of writ of error *coram nobis* appear quite consistent among themselves (see *People* v. *Lumbley*, 8 Cal.2d 752 [68 P.2d 354] ; *People* v. *Harincar*, 49 Cal.App.2d 594 [121 P.2d 751] ; *People* v. *McVicker*, 37 Cal.App.2d 470 [99 P.2d 1110] ; *People* v. *Lyle*, 21 Cal.App.2d 132 [68 P.2d 378] ; *People* v. *McConnell*, 20 Cal.App.2d 196 [66 P.2d 720] ; *People* v. *Moore*, 9 Cal. App.2d 251 [49 P.2d 615]), the language of the last-mentioned cases cannot be reconciled with the majority opinion herein or with certain other recent cases decided by the District Courts of Appeal and involving review by way of proceedings on habeas corpus (see *In re Connell*, 68 Cal.App.2d 360 [156 P.2d 483] ; *In re Howard*, 69 Cal.App.2d 164 [158 P.2d 408] ; *In re Williams*, 76 Cal.App.2d 161 [172 P.2d 558]). As the attack on the *validity* of an habitual criminal adjudication is in the nature of a collateral attack in proceedings on habeas corpus as well as in proceedings by way of writ of error *coram nobis* (*People* v. *Spivey*, 25 Cal.App.2d 279 [77 P.2d 247]), the scope of review in the former, in testing the *validity* of the judgment, should not be more extensive than the scope of review in the latter. I believe that the language employed

by this court and other courts in cases dealing with the review of habitual criminal adjudications in proceedings by way of the writ of error *coram nobis* points to the correct rule in proceedings on habeas corpus, and that said rule should prevail over the rule, apparently adopted without adequate consideration, in recent habeas corpus cases decided in the District Courts of Appeal and cited above. If the correct rule is applied here, then petitioner is not entitled to any relief in this proceeding.

In order to understand the far-reaching effect of the majority opinion, it is necessary to keep clearly in mind (1) the facts disclosed by the record in the criminal proceeding in which petitioner was adjudicated to be an habitual criminal; (2) the claims made by petitioner in this habeas corpus proceeding; and (3) the precise question presented here.

### The Facts Disclosed by the Record in the Criminal Proceeding

Petitioner was charged in 1938 with the commission of a felony in this state and with two prior convictions as follows: (1) a prior conviction in Oregon in 1932 when he was alleged to have been "convicted of the crime of burglary, a felony" and (2) a prior conviction in California in 1928 when he was alleged to have been "convicted of the crimes of forgery and grand theft, felonies." No question is raised concerning the sufficiency of the pleading of the prior convictions as felonies specifically enumerated in section 644 of the Penal Code. Petitioner pleaded guilty to the primary offense and admitted the alleged prior convictions. The judgment of conviction recited the foregoing facts including his admission of the prior convictions "as alleged in the information" and adjudged that "said Hugh R. Seeley is an Habitual Criminal." He was sentenced to Folsom "for the term of his natural life." The judgment became final.

### The Claims Made by Petitioner in This Habeas Corpus Proceeding

In this proceeding instituted in 1945, petitioner makes no claim that the trial court committed any error whatever in the criminal proceeding. His sole claim is that he made an error in that he should not have admitted the alleged prior conviction in Oregon of "burglary." As the basis for this claim, he sets forth what purports to be certain evidence, not

found in the record in the criminal proceeding in which he was adjudicated to be an habitual criminal, purporting to show that he was in fact convicted of the crime of "larceny in a building" rather than "burglary," and purporting to show further that the actual offense which he committed would not have constituted "burglary" as defined in this state. (Pen. Code, § 459.) Upon this showing by evidence dehors the record in the criminal proceeding in this state, petitioner seeks to have this court nullify that portion of the judgment adjudging him to be an habitual criminal, upon the grounds that the trial court "was without jurisdiction to invoke the statute (Pen. Code, § 644) against petitioner," and "that the said judgment, so rendered without jurisdiction as aforesaid, is illegal, unlawful, null, and void."

### The Question Presented

The real question presented is therefore as follows: "On this review on habeas corpus, brought for the purpose of nullifying the final judgment adjudicating petitioner to be an habitual criminal, does the scope of review extend beyond an inquiry into the jurisdiction of the trial court to make such adjudication, as disclosed by the face of the record in the criminal proceeding in which such adjudication was made, and permit petitioner to impeach the final judgment by evidence dehors the record in the criminal proceeding?"

In my opinion, the answer to this question should be in the negative, which answer is in line with the authorities in this state and elsewhere dealing with the traditional scope of review on habeas corpus.

### The Traditional Scope of Review on Habeas Corpus

It must be borne in mind at all times that there is involved in this proceeding a collateral attack upon a final judgment. In the early case of *Ex parte Max,* 44 Cal. 579, at page 581, this court referred to the "obvious distinction between the office of a writ of error or an appeal, on the one hand, and a writ of habeas corpus upon the other," and held that mere error could not be reviewed in the latter. This distinction has been frequently pointed out in the more recent decisions. (*In re Connor,* 16 Cal.2d 701 [108 P.2d 10]; *In re Selowsky,* 189 Cal. 331 [208 P. 99]; *In re Drew,* 188 Cal. 717 [207 P. 249]; *In re Valterza,* 37 Cal.App.2d 682 [100 P.2d 337]; *In re Koester,* 56 Cal.App. 621 [206 P. 116]; 13 Cal.Jur. 223.) Because of this fundamental distinction, it has been quite

widely and uniformly held that if a trial court has jurisdiction, its determination of the question whether an offense charged constituted a subsequent offense, which called for a penalty more severe than could be imposed for a first offense, cannot be attacked in a habeas corpus proceeding brought to obtain discharge from imprisonment under the sentence imposed, notwithstanding the fact that it might appear that the determination made was erroneous. (See 25 Am.Jur., Habeas Corpus, § 59, p. 188; *Ex parte Belt,* 159 U.S. 95 [15 S.Ct. 987, 40 L.Ed. 88]; *United States ex rel. Mason* v. *Hunt,* 16 F.Supp. 285; *Goodman* v. *Daly,* 201 Ind. 332 [165 N.E. 906]; *Ex parte Elicker,* 117 Ohio 500 [159 N.E. 478]; *Thompson* v. *Harris,* 107 Utah 99 [152 P.2d 91] [cert. den.] 324 U.S. 845 [65 S.Ct. 676, 89 L.Ed. 1406]; *Ex parte Brazel,* 293 Mich. 632 [292 N.W. 664]; *People ex rel. Garrison* v. *Wilson,* 29 N.Y.S.2d 811; *Mason* v. *Corrigan,* 289 N.Y.S. 1003.)

The foregoing authorities, and many others which might be cited, show that the traditional function of the writ of habeas corpus, when used for the purpose of attacking a final judgment, is solely to determine the jurisdiction of the trial court to enter the particular judgment under attack. It is also clear that the question of jurisdiction must ordinarily be determined from the face of the record in the action in which the judgment was entered, and that no evidence dehors that record may be received in the habeas corpus proceeding for the purpose of impeaching the judgment. (*In re Selowsky, supra,* 189 Cal. 331; *In re Stevenson,* 187 Cal. 773 [204 P. 216]; *In re Mirando,* 15 Cal.App.2d 443 [59 P.2d 544].)

The majority opinion recognizes that on habeas corpus "the court is ordinarily concerned with an inquiry into the jurisdiction of the court in which the prisoner was convicted" and that if the traditional scope of review on habeas corpus is to be observed in this proceeding, petitioner is not entitled to relief. It nevertheless grants relief, for the result of the majority opinion is to nullify the portion of the judgment by which petitioner was adjudged to be an habitual criminal. This result is reached despite the fact that the jurisdiction of the trial court was admittedly shown by the record in the criminal case and despite the fact that there was admittedly no error whatever on the part of the trial court in making the habitual criminal adjudication. On the contrary, it was the

clear duty of the trial court, upon the record in that case, to make such adjudication. (Pen. Code, § 644.)

## The Theory of the Majority Opinion

It is difficult to determine the theory of the majority opinion. It seems to proceed first upon the theory that this is one of those "exceptional cases" which justifies a total departure from the well-established rules governing the scope of review on habeas corpus. It then intermingles this theory with the further theory that the situation presented is merely one of excessive sentence which may be corrected on habeas corpus.

In a further attempt to sustain the result reached, passing reference is made to section 1025 of the Penal Code, which makes petitioner's admission of the prior conviction "conclusive of the fact of his having suffered such previous conviction in all subsequent proceedings" but it is declared, without the citation of any authority, that the term "subsequent proceedings" does not include proceedings on habeas corpus.

Further reference is made to section 1484 of the Penal Code which permits a petitioner on habeas corpus to "allege any fact" for certain purposes. The purpose of that section is obvious and its inapplicability here seems clear. In the vast range of circumstances under which habeas corpus may be used, there are comparatively few cases in which that remedy is used to attack the validity of a final judgment. Habeas corpus may be used in connection with all types of controversies, both civil and criminal and both before and after judgment, for the purpose of having a determination of the legality of detention. It is, of course, necessary in most cases to show all the facts; but where habeas corpus is used to attack the *validity* of a final judgment which is the basis for the detention, it is only in certain "exceptional circumstances," to which reference will be hereinafter made and which are not present here, that any fact dehors the record in the criminal proceeding may be alleged or proved. It seems clear that if "any fact" could ordinarily be alleged and proved when a proceeding on habeas corpus is used to attack the *validity* of the final judgment which is the basis for the detention, then no judgment would ever become final, and habeas corpus, rather than being a remedy which is limited in its scope, would become the vehicle for obtaining a retrial at any time of any

material issue which has previously been determined by the final judgment in a criminal proceeding.

In my opinion, the majority opinion presents no sound theory to support it. The result reached is directly contrary to settled rules and is in conflict with previous decisions of this court and the great weight of authority elsewhere.

*Petitioner's Case Should not be Decided upon the Theory that it Presents "Exceptional Circumstances" Justifying a Total Departure from the Well-Established Rules Governing the Scope of Review on Habeas Corpus*

It is true, as pointed out in the majority opinion, that certain recent cases involving so-called "exceptional circumstances" have extended the scope of review on habeas corpus beyond the consideration of what were theretofore deemed to be strictly jurisdictional questions; and it is also true that certain recent cases have extended the inquiry in such "exceptional circumstances" beyond the face of the record in the criminal proceeding. Some of these more recent cases were reviewed in *In re Bell,* 19 Cal.2d 488 [122 P.2d 22], at pages 492 to 495. While the writ was discharged in the Bell case for the reasons there stated, the discussion in the opinion was in line with the established rule in this state that "One who is held or imprisoned because of the violation of an unconstitutional statute or ordinance . . . may secure his discharge on habeas corpus, either before or after conviction by the lower court." (13 Cal.Jur. 225, § 8; see, also, 25 Am.Jur. 164, § 29.) With reference to the many authorities cited in the Bell case, it is significant to note that but few of said cases dealt with collateral attacks upon final judgments in criminal cases. In cases dealing with such collateral attacks and not involving the question of constitutionality of a statute or ordinance, the scope of review on habeas corpus and the extent of the inquiry have apparently been extended by this court and the United States Supreme Court only in those "exceptional circumstances" where fundamental constitutional questions were involved, such as due process and the like. (See *In re Connor, supra,* 16 Cal.2d 701; *In re Mooney,* 10 Cal. 2d 1 [73 P.2d 554]; *Mooney* v. *Holohan,* 294 U.S. 103 [55 S.Ct. 340, 79 L.Ed. 791, 98 A.L.R. 406]; *Powell* v. *Alabama,* 287 U.S. 45 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527].)

In *In re Connor, supra,* 16 Cal.2d 701, which was written by Mr. Justice Shenk, there is a discussion of the general rules

applicable in habeas corpus proceedings in this state. In that case it is said at pages 705 and 706: ''The function of the writ, as described in the case last cited, 'is to determine the legality of one's detention by an inquiry into the question of jurisdiction and the validity of the process upon its face, and whether anything has transpired since it was issued to render it invalid. It is not designed to retry issues of fact or to answer the purpose of an appeal.'

''Again, in *In re Murphy*, 79 Cal.App. 64 [248 P. 1044], it is said: 'The law appears to be well settled that upon a petition for a writ of *habeas corpus* the scope of the inquiry is limited to questions affecting the jurisdiction of the court, the sufficiency in point of law of the proceedings and the validity of the judgment or commitment under which the prisoner is restrained. This inquiry is limited to the face of the proceedings. In other words, the alleged invalidity must appear upon the face of the judgment attacked by this method. (12 R.C.L. 1185, § 8, p. 1240, § 59; 13 Cal.Jur. 217, § 4, and cases there cited.) In *Ex parte Long*, 114 Cal. 159 [45 P. 1057], it is stated: ''The inquiry to be had thereunder (on *habeas corpus* proceedings) does not extend beyond the question of jurisdiction and the validity of the process on its face.'' (*People ex rel. Doyle* v. *Atwell*, 232 N.Y. 96 [133 N.E. 364, 25 A.L.R. 107, 111].)' ''

That case then continues by stating that ''In the federal courts the rule may be said to permit a more extended inquiry in *habeas corpus*'' (p. 706) but that ''the application of the federal rule would not avail petitioner'' (p. 707) as ''petitioner failed to sustain the burden of establishing that he did not waive his right [to counsel]'' (p. 710). Then, on page 712, referring to the fact that the scope of inquiry on habeas corpus in this state may ''under exceptional circumstances'' extend over the entire course of proceedings in the trial court and ''may embrace additional evidence,'' the cases of *In re Mooney*, 10 Cal.2d 1 [73 P.2d 554], and *Frank* v. *Mangum*, 237 U.S. 309 [35 S.Ct. 582, 59 L.Ed. 969], are cited. A reading of those cases reveals, however, that in each the ''exceptional circumstances'' was a claimed denial of the fundamental constitutional right to ''due process of law.'' As stated in the quotation from the Frank case, found on page 713, upon habeas corpus the court has the right ''to look beyond forms and inquire into the very substance of the matter, *to the extent of deciding whether the prisoner has*

*been deprived of his liberty without due process of law,* and for this purpose, to inquire into jurisdictional facts, whether they appear upon the record or not . . .'' (Emphasis added.)

In the case before us, we are not dealing with a claim that petitioner was denied any fundamental constitutional right in the trial of the case in which he was adjudicated an habitual criminal, nor are we dealing with a claim that any statute under which petitioner was adjudicated to be an habitual criminal was an unconstitutional statute. On the contrary, petitioner concedes the regularity of all proceedings in the trial court and is merely seeking a redetermination of the issues previously determined, without error, by the judgment which he seeks to nullify. There are therefore no such ''exceptional circumstances'' presented here as would warrant the departure from the well-established rules which limit our inquiry here to the face of the record in the trial court. If petitioner's claims are true, he simply failed to make those claims at the appropriate time when the questions could have been raised in the trial court. Having failed to raise the issue in the trial court or on appeal and the judgment having become final, there should be ''no further legal recourse by any form of judicial review.'' (*People* v. *Lumbley, supra,* 8 Cal. 2d 752, 760; *People* v. *Moore, supra,* 9 Cal.App.2d 251, 255.)

While the last cited cases involved proceedings by way of writ of error *coram nobis,* the rules which should be applied here to this attack on habeas corpus upon the *validity* of the judgment should not be declared to permit a more extensive review. To follow the majority opinion to its logical conclusion would mean that every inmate of the penitentiaries who had pleaded guilty to the offense for which he was incarcerated and who thereafter might claim at any time that he had entered his plea of guilty by mistake, would be entitled to have the issues of law and fact tried out on habeas corpus when those issues should have been tried in the trial court on a plea of not guilty. This is precisely the illustration referred to in *People* v. *Lumbley, supra,* 8 Cal.2d 752, where it was said at page 760: ''We fail to see how the position of defendant in this proceeding is any different from that of a person who pleads guilty to a crime believing in fact that he was guilty of the same at the time of his plea, when, as a matter of law, the facts could not establish his guilt.'' It has never before been suggested that such person would be entitled to obtain review on habeas corpus of the final judgment

of conviction, but if the majority opinion is followed to its logical conclusion, that is the inevitable result.

It must be remembered that no error on the part of the trial court has been shown, but even in those cases where error might be shown, I believe the reasoning of the Supreme Court of Utah, in dealing with a similar question, should be applied. In *Thompson* v. *Harris,* 107 Utah 99 [152 P.2d 91, at page 92], the court said:

"We have considered the arguments and authorities cited in support of each of these contentions. In the former opinion we held that the writ of habeas corpus could be used to correct jurisdictional errors and to determine whether or not the petitioner had been deprived of any constitutional right. Except in these two respects, errors in proceedings before a trial court must be corrected by appeal. One of the basic difficulties inherent in a contrary holding is the question of where to draw the line. Somewhere and sometime there must be an end to litigation. The writ of habeas corpus must not be used to discover and correct all errors which might creep into a criminal trial. The time for taking an appeal has wisely been limited by law. If the writ of habeas corpus were to be used to reach all defects in the trial which could be raised by a timely appeal, no conviction could ever become final. We recognize that some errors are more prejudicial to a defendant than are others, but if habeas corpus is to be used to correct error, where can we draw the line? Should we leave the determination as to when there has been and has not been sufficient error to warrant interference by the use of a writ of habeas corpus entirely to the discretion of each judge based on standards which he may invoke from his own mind? We believe that the only sound line that can be drawn is to restrict the use of the writ of habeas corpus to the correction of jurisdictional errors and to errors so gross as to in effect deprive the defendant of his constitutional substantive or procedural rights. Anything short of that must be corrected on appeal or by the Board of Pardons."

From what has been said, it seems clear that petitioner has presented no such "exceptional circumstances" as to justify a departure from the long line of authorities limiting the scope of review on habeas corpus.

*Petitioner's Case Cannot Be Decided Upon the Theory That It Involves the Question of Excessive Sentence*

In those cases in which it has appeared from the face of

the record in the criminal proceeding that a petitioner has been sentenced for a term in excess of that permitted by law, relief by habeas corpus has been held available. (*In re Morck,* 180 Cal. 384 [181 P. 657].) Relief has been granted in such cases because the *judgment* entered did not, as a matter of law, warrant the imposition of the *sentence* imposed. But no authorities have been cited holding that where a court has jurisdiction and pronounces a valid judgment of conviction, the sentence based upon that judgment may be declared excessive on habeas corpus, where the sentence imposed is merely one for the term prescribed by law. Since the adoption of the indeterminate sentence law, the trial court ordinarily sentences the accused "for the term prescribed by law." It is for this reason that but little use has been found for the writ of habeas corpus to gain relief from excessive sentences since the adoption of the indeterminate sentence law. There still remain some offenses for which determinate sentences, within certain prescribed limits, may be imposed by the court, and in fixing such determinate sentences, the court may exercise a discretion. But for the vast majority of offenses, the sentence imposed is an indeterminate sentence which is fixed by law rather than by the court, subject to being made a determinate sentence later by action of the proper authorities.

Under our law relating to habitual criminals, it is required that the accused "shall be adjudged an habitual criminal and shall be punished by imprisonment in the State prison for life." (Pen. Code, § 644.) Therefore, when an accused is adjudged to be an habitual criminal, there is only one possible sentence, and that is life imprisonment. (*Ex parte Heath,* 193 Cal. 192 [233 P. 546].) This is a determinate, and not an indeterminate, sentence but the trial court has no discretion in imposing it. It is a sentence fixed by law rather than by the court. It is therefore necessary to distinguish between the *judgment* and the *sentence,* and when this distinction is borne in mind, it is apparent that there can be no question of excessive sentence involved in an habitual criminal case where the sentence imposed upon one who has been adjudged to be an habitual criminal is precisely the sentence prescribed by law. Such was the case here, and all discussion of excessive sentence is beside the point. When the majority opinion declares that "It follows that an excessive sentence was im-

posed upon the petitioner," it proceeds upon an erroneous theory; and the result reached in the majority opinion can only be obtained by nullifying the judgment adjudicating petitioner to be an habitual criminal, rather than by declaring excessive the sentence prescribed by law. As was said in *Thompson* v. *Harris, supra,* 152 P.2d 91, at page 95, "To set this sentence aside we must go back behind the judgment." The majority opinion does not expressly nullify the habitual criminal adjudication but it declares that "The proper course to pursue is for the constituted authority to refix the sentence of petitioner in accordance with the declaration of his rights as stated in this opinion." Such declaration, concerning the proper course to pursue, necessarily implies that the habitual criminal adjudication is nullified, for if it is not, there can be no justification for any "constituted authority to refix the sentence" in derogation of the provisions of section 644 of the Penal Code.

*Manner of Determining Jurisdiction on Habeas Corpus Where the Attack is upon the Validity of the Habitual Criminal Adjudication*

Having indicated that the present case may not be decided upon the theory that it involves either "exceptional circumstances" or an "excessive sentence," and that therefore the general rules limiting the scope of review on habeas corpus should be applied, no real problem is involved here concerning the manner of determining the jurisdiction of the trial court to enter the judgment adjudicating petitioner to be an habitual criminal. It was alleged and admitted in the trial court that petitioner had suffered two prior convictions for crimes specifically enumerated in section 644 of the Penal Code, and the majority opinion apparently concedes that neither an examination of the face of the record nor an examination of the entire record in the trial court would show either that the trial court was without jurisdiction or that it had committed any error. Under these circumstances it would appear unnecessary to discuss the broader question of the manner of determining jurisdiction on habeas corpus under other circumstances. However, the discussion in the majority opinions here and in the McVickers case covers a broad field and the views expressed therein are so widely at variance with my own, that it appears appropriate to dis-

cuss more generally the question of determining jurisdiction in habitual criminal cases. That which follows will be directed, of course, to the rules which should be applied in a proceeding on habeas corpus rather than to the rules applicable in the trial court or on direct attack by way of appeal; and will be further directed to those cases in which the attack is upon the *validity* of an habitual criminal adjudication based upon two prior convictions rather than to the rules which may be applicable when the attack is upon the *effect* of an habitual criminal adjudication based upon more than two prior convictions.

In such cases, as indicated at the outset in this dissent, the rules derived from the cited authorities are that the scope of review extends only to the question of the jurisdiction of the trial court to make the habitual criminal adjudication; that the inquiry does not extend beyond the face of the record in the criminal proceeding in which such adjudication was made; and that if it does not affirmatively appear from the face of such record that the trial court was without jurisdiction to make such adjudication, then the habitual criminal adjudication should not be nullified. In the application of these rules, it will be assumed that the word "jurisdiction" should be given its broadest meaning, embracing the question of the power of the court to act in the particular manner, as indicated in *Fortenbury* v. *Superior Court,* 16 Cal.2d 405 [106 P.2d 411], cited in the majority opinion. (See, also, *Abelleira* v. *District Court of Appeal,* 17 Cal.2d 280 [109 P.2d 942, 132 A.L.R. 715] ; *Evans* v. *Superior Court,* 14 Cal.2d 563 [96 P.2d 107].) It will be further assumed that when the authorities which are cited with approval in *In re Connor, supra,* 16 Cal.2d 701, and which are quoted above, state that in determining the question of "jurisdiction" the "alleged invalidity must appear upon the face of the judgment," and also state that "the inquiry . . . does not extend beyond the question of jurisdiction and the validity of the process on its face"; and further state that the "inquiry is limited to the face of the proceedings," the indication is that for the purposes under discussion, the inquiry may extend to but not beyond the face of what may be termed the "judgment roll." (See *People* v. *Spivey, supra,* 25 Cal.App.2d 279; 13 Cal.Jur. 225, § 7.) The expression "face of the record," as used herein, is intended to mean

the "face of the judgment roll." The question then remains as to when it may be said that the lack of "jurisdiction" affirmatively appears from the face of the record or judgment roll.

While no debatable question is presented in the instant case, perhaps a debatable question would arise in the numerous cases in which a prior conviction of felony in another jurisdiction had been alleged in the information for an offense which is not designated by a name identical with that of any crime specified in section 644 of the Penal Code. A typical example would be an information in which two prior convictions similar to the two challenged prior convictions in the McVickers case ("grand theft, a felony" and "nine counts of the crime of Violation of Section 218 of the Criminal Code of the United States of America, a felony") had been alleged in the information and had been either admitted by the accused or proved, and had thereafter formed the sole basis for the judgment adjudicating the accused to be an habitual criminal. In such case the most that could be said is that it did not appear from the face of the record whether either alleged prior conviction was or was not a conviction for an offense within the purview of sections 644 and 668 of the Penal Code. Under these circumstances, it could not be held that it affirmatively appeared from the face of the record that the trial court was without jurisdiction to make the habitual criminal adjudication, and therefore the petitioner should be denied relief upon habeas corpus. In the numerous cases of this type which may arise, it is incumbent upon the accused to challenge the sufficiency of the alleged prior in the trial court or on direct attack by way of appeal, but if he fails to do so and the judgment becomes final there should be "no further legal recourse by any form of judicial review." (*People* v. *Lumbley, supra,* 8 Cal.2d 752, 760; *People* v. *Moore, supra,* 9 Cal.App.2d 251, 255.)

The foregoing suggested rules for the determination of jurisdiction on habeas corpus are in harmony with the previous decisions of this court in habeas corpus cases dealing with habitual criminal adjudications and are likewise in harmony with the previous decisions of the District Courts of Appeal in habeas corpus cases, with the exception of the few recent cases to which reference has already been made. While several decisions of this court are cited in the majority opinion

herein and in the majority opinion in the McVickers case, this court has not up to the present time nullified a single habitual criminal adjudication in a proceeding on habeas corpus. In said majority opinions, the following cases of this court are cited: *In re Rosencrantz*, 211 Cal. 749 [297 P. 15]; *In re Rosencrantz*, 205 Cal. 534 [271 P. 902]; *In re Boatwright*, 216 Cal. 677 [15 P.2d 755]; *In re Brady*, 5 Cal.2d 224 [53 P.2d 945]. In *none* of those cases was an habitual criminal adjudication made by the trial court, and the question involved on habeas corpus was the *effect* of the judgment, and not the *validity* of the judgment. The same comment may be made with respect to the cases of *In re Bertrand*, 61 Cal.App. 2d 183 [142 P.2d 351], and *In re Spaulding*, 8 Cal.App.2d 497 [48 P.2d 133], which are cited in the majority opinions. In *In re Gilliam*, 26 Cal.2d 860 [161 P.2d 793], there was an habitual criminal adjudication but it was not nullified. The question of the scope of review on habeas corpus was not discussed and it was merely held that upon the entire showing made, the petitioner there had made no showing entitling him to relief. Neither was the habitual criminal adjudication nullified in *In re Tarter*, 1 Cal.App.2d 400 [36 P.2d 419], nor in *In re Miller*, 133 Cal.App. 228 [23 P.2d 1034], which are likewise cited. As heretofore stated, the few recent decisions of the District Courts of Appeal which are not in harmony with these views are *In re Connell*, 68 Cal.App.2d 360 [156 P.2d 483]; *In re Howard*, 69 Cal.App.2d 164 [158 P.2d 408]; and *In re Williams*, 76 Cal.App.2d 161 [172 P.2d 558].

Before leaving the question of the manner of determining jurisdiction, I desire to make clear my views with respect to the decision in *Thompson* v. *Utah, supra,* 152 P.2d 91, the reasoning in which case the majority opinion refuses to follow. I believe that such reasoning should be followed insofar as it declares that there was no lack of "due process" and that therefore the general rules applicable on habeas corpus should be applied. But under the broadened meaning of the word "jurisdiction" in this state, this court would no doubt reach a different result under similar circumstances from that reached in the Thompson case, if, as stated on page 92 of the opinion there, "the information affirmatively disclosed that the two previous convictions upon which the state would rely to show that Thompson was an habitual criminal were not sufficient to support a conviction under the Habitual Criminal statute." It may be assumed from this statement that

it affirmatively appeared from the face of the record that the prior convictions could not have been for offenses upon which an habitual criminal adjudication could have been based. In the application of the above-mentioned rules to such situation, it would undoubtedly be held in this state that it affirmatively appeared from the face of the record that the trial court was without "jurisdiction" to make the habitual criminal adjudication. But there is a vast difference between merely according to the word "jurisdiction" its broadened meaning on habeas corpus and, on the other hand, extending the inquiry to determine "jurisdiction" on habeas corpus beyond the face of the record in the criminal proceeding in which the habitual criminal adjudication was made. This is precisely what is done in the majority opinion herein, as it sanctions the examination not alone of the entire record in the criminal proceedings but also of any facts which may be presented in the habeas corpus proceeding, even though such facts may be contrary to the facts which were admitted or proved in such criminal proceeding. I find nothing in the present case to justify this wide departure from the established rules governing the scope of review on habeas corpus.

### Conclusion

It is apparent from what has been said that petitioner is not entitled to the relief demanded or to the relief accorded him by the majority opinion, unless this court is prepared to permit an unlimited review on habeas corpus of any judgment adjudicating an accused to be an habitual criminal. I am of the view that such unlimited review should not be permitted.

If perchance an injustice has been done in this case, petitioner's remedy is not by way of further judicial review but rather by way of an application for executive clemency. As was said in *Thompson* v. *Harris, supra,* 152 P.2d 91, at page 92: "Somewhere and sometime there must be an end to litigation."

In my opinion, the writ should be discharged and petitioner should be remanded without any declaration, express or implied, which has the effect of nullifying the judgment adjudicating him to be an habitual criminal.

Edmonds, J., and Traynor, J., concurred.